## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TYRONE GIBSON,<br>1923 Kearney Street, NE<br>Washington, DC 20018<br>　　　　　Plaintiff.<br><br>　　v.<br><br>KIRKLAND & ELLIS, LLP<br>1301 Pennsylvania Avenue, NW<br>Washington, DC 20004<br><br>　　　　　Defendant. | Civil Action No.: 1:23-cv-03371-TSC<br><br><br><br>JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

Plaintiff TYRONE GIBSON, by his undersigned counsel, hereby complains of Defendant KIRKLAND & ELLIS, LLP ("Defendant") as follows:

## NATURE OF THE CASE

1. Defendant subjected Mr. Gibson to discrimination and disparate treatment thereby creating a hostile work environment when, after Mr. Gibson complained about racially discriminatory comments and actions by his subordinates and supervisor, Defendant wrongfully terminated his employment.

2. Mr. Gibson brings this action to recover damages for Defendant's unlawful discrimination on the bases of race (African American), color (Black), family responsibilities, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(2) *et. seq.*, 1866 Civil Rights Act, 42 U.S.C. § 1981, and the D.C. Human Rights Act, D.C. Code § 2-1401 *et seq*. ("DCHRA").

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a).

4. Venue is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as Defendant resides and/or is located in D.C. and because the underlying events occurred in D.C.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On July 12, 2023, Mr. Gibson filed a Charge of Discrimination alleging discrimination on the basis of race (African American), color (Black), and retaliation (filing an internal harassment complaint) when his subordinates disrespected his authority and disregarded his instructions, Defendant paid him less than similarly situated employees, placed him on a Performance Improvement Plan, and terminated his employment with the D.C. Office of Human Rights which was cross-filed with the Equal Employment Opportunity Commission ("EEOC").

6. On July 18, 2023, the Equal Employment Opportunity Commission issued Mr. Gibson a Determination of Charge and Notice of Right to Sue.

7. This Complaint, filed within 90 day of the Notice of Rights to Sue, on or before October 16, 2023, is timely.

## THE PARTIES

8. Plaintiff Tyrone Gibson was employed by Defendant Kirkland & Ellis, LLP from December 26, 2018, through April 11, 2023, when Defendant wrongfully terminated his employment.

9. Mr. Gibson is African American/Black and is responsible for taking his daughter to and from her after-school activities every weekday except Thursdays. Because his wife works the night shift, Mr. Gibson is solely responsible for driving his daughter to and from her after-school activities.

2

10. Defendant is a global law firm with over attorneys 3,500 attorneys working out of 18 offices in 6 countries. At all times relevant, Mr. Gibson worked at Defendant's Washington, D.C. office at 1301 Pennsylvania Avenue, NW.

## **STATEMENT OF FACTS**

*Background.*

11. On December 26, 2018, Mr. Gibson began his employment with Defendant as a Technology Analyst, Level I. In this role, he provided technological support to Defendant's employees.

12. In January 2020, Defendant promoted Mr. Gibson to Technology Analyst Level II.

13. During FY20, Mr. Gibson earned the highest performance rating, Distinguished, with an additional $5,000 bonus.

14. During FY21, Mr. Gibson earned the second highest performance rating, Successful Plus.[1]

15. In July 2022, Mr. Gibson applied for and was promoted to Technology Support Supervisor. In this role, he oversaw the technology department at the D.C. office and supervised ten people – six technology analysts, two AV (audio-visual) technicians, and two contractors.

16. As Technology Support Supervisor, Mr. Gibson reported directly to Kenneth Kim (Asian), Associate Director, who controlled, reviewed, and supervised nearly all aspects of Mr. Gibson's work.

17. As Technology Support Supervisor, Mr. Gibson was responsible for determining his team's schedule. Upon starting in this role, in July 2022, Mr. Gibson placed himself on the earlier shift, 7:30 AM to 4:00 PM, because he was responsible for taking his daughter to her after-school activities each week on Mondays, Tuesdays, Wednesdays, and Fridays. He had to leave

---

[1] Defendant told Mr. Gibson that no one within Defendant's company earned a Distinguished rating two years in a row.

no later than 4:45 to pick her up in time. Defendant raised no issues with Mr. Gibson's schedule.

***Mr. Gibson's salary is not comparable with his peers.***

18. Upon starting as the Technology Support Supervisor, in July 2022, Mr. Gibson requested to negotiate his salary.

19. To delay the discussion, Human Resources and Mr. Kim told Mr. Gibson they had to first let Sam Waskowicz (Caucasian) know that Defendant selected Mr. Gibson, and not Mr. Waskowicz, for the promotion.

20. After Mr. Gibson repeated his request for a discussion regarding his salary, Mr. Kim then told Mr. Gibson it was now too late to discuss a salary adjustment.

21. In December 2022, Mr. Gibson again asked for a salary raise commensurate with his peers in the New York and Boston offices, which Defendant denied due to lack of money available for the D.C. office.

22. Brad Koerber (Caucasian), the Technology Support Supervisor prior to Mr. Gibson, had a higher salary and enjoyed a higher pay grade than Mr. Gibson, while in a similar role.

***Mr. Gibson experiences and reports harassment based on his race.***

23. In or around July 2022, Mr. Waskowicz told Mr. Gibson he would not work under his authority "because [he] is Black."

24. Mr. Gibson immediately reported this racist comment to Mr. Kim.

25. Mr. Kim questioned Mr. Gibson about whether Mr. Waskowicz made this comment, which Mr. Gibson confirmed.

26. Mr. Kim held two meetings with Mr. Gibson and his subordinates to address Mr. Waskowicz's disrespectful and insolent behavior. However, Mr. Waskowicz continued to act in an

4

insubordinate manner.

27. Defendant took no other action to prevent this continued harassment.

28. In November 2022, Michele Lima, who is not African American/Black, joined Mr. Gibson's team.

29. Upon starting, Mr. Lima disrespected Mr. Gibson, questioned his authority, and disregarded his directions.

30. In November and December 2022, Mr. Gibson complained to Mr. Kim about Mr. Lima.

31. In response, Mr. Kim downplayed Mr. Gibson's allegations, asking whether Mr. Lima did not understand his instructions and suggesting that he believed Mr. Gibson was in the wrong.

32. In or around December 2022 or January 2023, Mr. Kim called Mr. Gibson "stupid."

33. Mr. Gibson verbally complained about Mr. Kim's comment to Anna Freeman, Human Resources Coordinator.

34. Human Resources spoke to Mr. Kim regarding his comments and Mr. Kim read a prepared apology statement to Mr. Gibson.

35. In February 2023, Mr. Gibson directed Mr. Lima to perform inventory management and other work in line with his job duties, but Mr. Lima refused to follow his directions.

36. On February 26, 2023, Mr. Gibson filed a written complaint concerning Mr. Lima's disrespectful conduct and failure to follow instructions with Ms. Freeman, who forwarded the complaint to Kathleen Stone, Director of Human Resources.

37. Ms. Stone spoke to Phillip Merriman, Global Director of Technology, regarding Mr. Gibson's complaint.

38. Mr. Merriman spoke to Mr. Kim regarding Mr. Lima's actions.

39. Defendant did not take any action with respect to Mr. Gibson's complaint.

*Defendant places Mr. Gibson on a Performance Improvement Plan.*

40. On March 1, 2023, in a meeting with Mr. Kim and Mr. Merriman, Mr. Kim told Mr. Gibson that he placed him on a Performance Improvement Plan ("PIP").

41. Up until this point, nobody at Defendant's office had ever previously raised any issues with Mr. Gibson's performance.

42. The PIP contained allegations that Mr. Gibson's performance was not at the level expected of a Technology Support Supervisor; directed Mr. Gibson to only discuss employee performance issues with his manager and the employee; to ensure that all tickets submitted by his team are entered for all assistance delivered and that all equipment is properly accounted and maintained.

*Defendant directs Mr. Gibson to stop talking about the past in response to his reports of discrimination.*

43. On or around March 6, 2023, Mr. Gibson again told Mr. Kim that his subordinates continue to harass and sabotage him, and no one had acted on his complaints.

44. Mr. Kim directed Mr. Gibson to "stop talking about the past" and to not speak to Human Resources regarding his complaints. Mr. Kim took no further action.

45. On or around March 13, 2023, Mr. Gibson sent a memorandum in response to the PIP and Mr. Kim's refusal to act on his complaints to Defendant's Human Resources department, including Ms. Stone, and Julie Marcus, Chief Human Resources Officer.

46. Mr. Gibson questioned why he was placed on the PIP and what specifically was deficient about his performance.

47. Mr. Gibson also told Human Resources that Mr. Kim directed him to not discuss employee concerns with human resources and that the PIP echoed this directive: "Employee

performance issues should not be discussed with other departmental staff members. You should only discuss performance issues with your manager and the employee." Mr. Gibson believed this directive violated Defendant's "open door" policy.

48. That same week, Sabbine Curto, Senior Director of Administration, called Mr. Gibson to work on himself going forward, and to "stop looking in the rearview mirror.".

49. Mr. Merriman similarly asked to meet with Mr. Gibson that week. During the meeting, Mr. Gibson brought up concerns about Mr. Kim, the PIP, and the hostile work environment, Mr. Merriman repeated Mr. Kim and Ms. Curto's directive: "stop looking in the rearview mirror."

50. Then, Tim Freund, Director of Infrastructure, called Mr. Gibson and repeated the same phrase: "don't look in the rearview mirror."

*Defendant continues to discriminate and retaliate against Mr. Gibson.*

51. On or around March 13, 2023, Mr. Waskowicz, in front of Mr. Merriman, told Mr. Gibson he "did not have to listen to [him]" and that Mr. Gibson was "not his boss anymore."

52. Mr. Kim frequently targeted the three African American men on the team.

53. For example, on or around March 20, 2023, Mr. Kim informed the Defendant's Risk Management Department that a departed employee was under a preservation order but someone within the technology department had accidentally wiped her laptop.

54. Mr. Kim verbally reprimanded only Mr. Gibson and the African American/black employees and ordered them to provide additional training on the preservation process.

55. Mr. Gibson explained that he was out of the office when this occurred and could not explain why the team did not follow the proper process while they were out.

56. Mr. Waskowicz then wrote an angry email to the technology department wherein he attacked Mr. Gibson and the process Mr. Gibson had already put into place to avoid preservation issues.

Mr. Waskowicz also disclosed that Mr. Lima was responsible for the mishandling of the laptop.

57. Mr. Kim did not reprimand Mr. Lima or other non-African American/black employees for failing to follow the proper processes.

***Defendant retaliates by changing Mr. Gibson's schedule.***

58. During the week of March 27, 2023, Mr. Kim asked Mr. Gibson to change his work schedule to a later shift.

59. In response, Mr. Gibson explained that he had to be on the earlier shift because he had to drive his daughter to after-school activities every day of the week, except Thursdays.

60. On March 31, 2023, Mr. Kim directed Mr. Gibson to work the later shift starting the following week.

61. On April 1, 2023, Mr. Gibson forwarded his communications with Mr. Kim to Lauren Keating, Associate Relations Coordinator:

> Every week, every conversation is another opportunity for Ken [Kim] to punish me. This is not a result of a discussion this is him ordering me to take another shift. This has gotten so out of hand, I told him I have family obligations with my daughter every day but Thursday. This is why my position is not savable, my job is not secure. This level of harassment, is damaging to the spirit and the whole notion of Kirkland and Ellis.
>
> I don't know how many policies are broken when you force familial changes on a person, but this is a movie on how to not treat people. Also I want to talk Monday about making an official complaint. I know we talked about possible "misuse of language" but its time to actually make an official complaint.

62. On or around April 10, 2023, Mr. Gibson told Tameka Bass, Human Resources, about Mr. Waskowicz's racist comments and inappropriate behavior.

63. Ms. Bass said she could not ignore this complaint and would take action.

***Defendant terminates Mr. Gibson's employment.***

64. On April 11, 2023, Mr. Kim, Mr. Merriman, and Ms. Keating issued Mr. Gibson a Separation Agreement and informed him that April 11, 2023 would be his last day of employment.

65. Ms. Keating alleged that Mr. Gibson inappropriately accessed data without proper authorization and sent proprietary information to his personal email address.

66. Mr. Merriman told Mr. Gibson that he was not as "enthusiastic" about this job as he was when he first started.

67. These reasons for terminating Mr. Gibson are false and pretext for discrimination.

68. Mr. Gibson has suffered monetary damages as a result of the unlawful discrimination to include without limitation, lost and future wages and benefits, emotional pain and suffering, emotional distress and mental anguish.

69. Defendant acted with malice and wanton and reckless disregard for Mr. Gibson's protected civil rights.

70. Defendant's violations were intentional, willful, and/or malicious, and were otherwise not in good faith.

### COUNT 1 – Race and Color Discrimination – Termination

**(Title VII of the Civil Rights Act of 1964 – 42 U.S.C. §§ 2000(e), *et seq.*)**

71. Mr. Gibson repeats and realleges paragraphs 1-70, as if fully set forth herein.

72. Defendant discriminated against Mr. Gibson on the basis of race (African American) and color (Black) when Defendant terminated his employment.

73. By and through its conduct, Defendant discriminated against Mr. Gibson in violation of Title VII of the Civil Rights Act of 1964.

74. Defendant's actions were intentional, reckless, and malicious.

75. As a result, Plaintiff incurred damages, including lost wages and benefits, pain and suffering, emotional distress, mental anguish, and/or punitive damages.

## COUNT 2 – Race and Color Discrimination – Hostile Work Environment

### (Title VII of the Civil Rights Act of 1964 – 42 U.S.C. §§ 2000(e), *et seq.*)

76. Mr. Gibson repeats and realleges paragraphs 1-75, as if fully set forth herein.

77. Defendant discriminated against Mr. Gibson on the basis of race (African American) and color (Black) when Defendant subjected Mr. Gibson to a hostile work environment.

78. By and through its conduct, Defendant discriminated against Mr. Gibson in violation of Title VII of the Civil Rights Act of 1964.

79. Defendant's actions were intentional, reckless, and malicious.

80. As a result, Plaintiff incurred damages, including lost wages and benefits, pain and suffering, emotional distress, mental anguish, and/or punitive damages.

## COUNT 3 – Race and Color Discrimination – Unequal Pay

### (Title VII of the Civil Rights Act of 1964 – 42 U.S.C. §§ 2000(e), *et seq.*)

81. Mr. Gibson repeats and realleges paragraphs 1-80, as if fully set forth herein.

82. Defendant discriminated against Mr. Gibson on the basis of race (African American) and color (Black) when Defendant paid Mr. Gibson less than other similarly situated employees.

83. By and through its conduct, Defendant discriminated against Mr. Gibson in violation of Title VII of the Civil Rights Act of 1964.

84. Defendant's actions were intentional, reckless, and malicious.

85. As a result, Plaintiff incurred damages, including lost wages and benefits, pain and suffering, emotional distress, mental anguish, and/or punitive damages.

## COUNT 4 – Race and Color Discrimination – Termination

### (1866 Civil Rights Act, 42 U.S.C. § 1981)

86. Mr. Gibson repeats and realleges paragraphs 1-85, as if fully set forth herein.

87. Defendant discriminated against Mr. Gibson on the basis of race (African American) and color

(Black) when Defendant terminated his employment.

88. By and through its conduct, Defendant discriminated against Mr. Gibson in violation of the 1866 Civil Rights Act.

89. Defendant's actions were intentional, reckless, and malicious.

90. As a result, Plaintiff incurred damages, including lost wages and benefits, pain and suffering, emotional distress, mental anguish, and/or punitive damages.

## **COUNT 5 – Race and Color Discrimination – Hostile Work Environment**

**(1866 Civil Rights Act, 42 U.S.C. § 1981)**

91. Mr. Gibson repeats and realleges paragraphs 1-90, as if fully set forth herein.

92. Defendant discriminated against Mr. Gibson on the basis of race (African American) and color (Black) when Defendant subjected Mr. Gibson to a hostile work environment.

93. By and through its conduct, Defendant discriminated against Mr. Gibson in violation of the 1866 Civil Rights Act.

94. Defendant's actions were intentional, reckless, and malicious.

95. As a result, Plaintiff incurred damages, including lost wages and benefits, pain and suffering, emotional distress, mental anguish, and/or punitive damages.

## **COUNT 6 – Race and Color Discrimination – Unequal Pay**

**(1866 Civil Rights Act, 42 U.S.C. § 1981)**

96. Mr. Gibson repeats and realleges paragraphs 1-95, as if fully set forth herein.

97. Defendant discriminated against Mr. Gibson on the basis of race (African American) and color (Black) when Defendant paid Mr. Gibson less than other similarly situated employees.

98. By and through its conduct, Defendant discriminated against Mr. Gibson in violation of the 1866 Civil Rights Act.

99. Defendant's actions were intentional, reckless, and malicious.

100. As a result, Plaintiff incurred damages, including lost wages and benefits, pain and suffering, emotional distress, mental anguish, and/or punitive damages.

## COUNT 7 – Race and Color Discrimination – Termination

### (D.C. Human Rights Act – D.C. Code § 2-1402.11, *et. seq.*)

101. Mr. Gibson repeats and realleges paragraphs 1-100, as if fully set forth herein.

102. Defendant discriminated against Mr. Gibson on the basis of race (African American) and color (Black) when Defendant terminated his employment.

103. By and through its conduct, Defendant discriminated against Mr. Gibson in violation of DCHRA.

104. Defendant's actions were intentional, reckless, and malicious.

105. As a result, Plaintiff incurred damages, including lost wages and benefits, pain and suffering, emotional distress, mental anguish, and/or punitive damages.

## COUNT 8 – Race and Color Discrimination – Hostile Work Environment

### (D.C. Human Rights Act – D.C. Code § 2-1402.11, *et. seq.*)

106. Mr. Gibson repeats and realleges paragraphs 1-105, as if fully set forth herein.

107. Defendant discriminated against Mr. Gibson on the basis of race (African American) and color (Black) when Defendant subjected Mr. Gibson to a hostile work environment.

108. By and through its conduct, Defendant discriminated against Mr. Gibson in violation of DCHRA.

109. Defendant's actions were intentional, reckless, and malicious.

110. As a result, Plaintiff incurred damages, including lost wages and benefits, pain and suffering, emotional distress, mental anguish, and/or punitive damages.

## COUNT 9 – Race and Color Discrimination – Unequal Pay

### (D.C. Human Rights Act – D.C. Code § 2-1402.11, *et. seq.*)

111. Mr. Gibson repeats and realleges paragraphs 1-110, as if fully set forth herein.

112. Defendant discriminated against Mr. Gibson on the basis of race (African American) and color (Black) when Defendant paid Mr. Gibson less than other similarly situated employees.

113. By and through its conduct, Defendant discriminated against Mr. Gibson in violation of DCHRA.

114. Defendant's actions were intentional, reckless, and malicious.

115. As a result, Plaintiff incurred damages, including lost wages and benefits, pain and suffering, emotional distress, mental anguish, and/or punitive damages.

## COUNT 10 – Retaliation for Protected Activity – Termination

### (Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), *et seq.*)

116. Mr. Gibson repeats and realleges paragraphs 1-115, as if fully set forth herein.

117. Defendant retaliated against Mr. Gibson after he internally complained about discriminatory behavior when Defendant terminated his employment.

118. By and through its conduct, Defendant retaliated against Mr. Gibson in violation of Title VII of the Civil Rights Act of 1964.

119. Defendant's actions were intentional, reckless, and malicious.

120. As a result, Plaintiff incurred damages, including lost wages and benefits, pain and suffering, emotional distress, mental anguish, and/or punitive damages.

## COUNT 11 – Retaliation for Protected Activity – Termination

### (D.C. Human Rights Act – D.C. Code § 2-1402.61)

121. Mr. Gibson repeats and realleges paragraphs 1-120, as if fully set forth herein.

122. Defendant retaliated against Mr. Gibson after he internally complained about discriminatory

behavior when it terminated his employment.

123. By and through its conduct, Defendant retaliated against Mr. Gibson in violation of DCHRA.

124. Defendant's actions were intentional, reckless, and malicious.

125. As a result, Plaintiff incurred damages, including lost wages and benefits, pain and suffering, emotional distress, mental anguish, and/or punitive damages.

## COUNT 12 – Family Responsibilities Discrimination – Hostile Work Environment

### (D.C. Human Rights Act – D.C. Code § 2–1402.11 *et seq.*)

126. Mr. Gibson repeats and realleges paragraphs 1-125, as if fully set forth herein.

127. Defendant discriminated against Mr. Gibson on the basis of family responsibilities when Mr. Gibson's supervisor tried to change Mr. Gibson's schedule.

128. By and through its conduct, Defendant discriminated against Mr. Gibson in violation of DCHRA.

129. Defendant's actions were intentional, reckless, and malicious.

130. As a result, Plaintiff incurred damages, including lost wages and benefits, pain and suffering, emotional distress, mental anguish, and/or punitive damages.

## COUNT 12 – Retaliation for Protected Activity – Hostile Work Environment

### (Title VII of the Civil Rights Act of 1964 – 42 U.S.C. §§ 2000(e), *et seq.*)

131. Mr. Gibson repeats and realleges paragraphs 1-130, as if fully set forth herein.

132. Defendant subjected Mr. Gibson to a hostile work environment because of his protected activity.

133. By and through its conduct, Defendant retaliated against Mr. Gibson in violation of Title VII of the Civil Rights Act of 1964.

134. Defendant's actions were intentional, reckless, and malicious.

135. As a result, Plaintiff incurred damages, including lost wages and benefits, pain and suffering,

emotional distress, mental anguish, and/or punitive damages.

## COUNT 13 – Retaliation for Protected Activity – Hostile Work Environment

**(D.C. Human Rights Act – D.C. Code § 2-1402.11, *et. seq.*)**

136. Mr. Gibson repeats and realleges paragraphs 1-135, as if fully set forth herein.

137. Defendant subjected Mr. Gibson to a hostile work environment because of his protected activity. By and through its conduct, Defendant discriminated against Mr. Gibson in violation of DCHRA.

138. Defendant's actions were intentional, reckless, and malicious.

139. As a result, Plaintiff incurred damages, including lost wages and benefits, pain and suffering, emotional distress, mental anguish, and/or punitive damages.

## JURY DEMAND

Mr. Gibson demands a trial by jury on all Counts.

WHEREFORE, Mr. Gibson respectfully requests this Court enter judgment against Defendant on all Counts and award Mr. Gibson damages in the amount of $2,000,000, or such other amount as determined by the jury for lost past wages and benefits, compensatory damages, punitive damages, attorney's fees, costs, pre- and post-judgment interest on the total amount of the award, the amount of tax on the total award; grant a permanent injunction enjoining Defendant, its officers, successors, assigns, agents, servants, employees, and all persons in active concert or participation with them, from engaging in race and family responsibilities discrimination and retaliation; and any such other relief as is just and proper.


Dated: December 21, 2023                         RESPECTFULLY SUBMITTED,

                                                 ALAN LESCHT AND ASSOCIATES, P.C.

/s/Katherine Lease

Katherine Lease [DC #1722844]
Alan Lescht [DC #441691]
1825 K Street, NW, Suite 750
Washington, DC 20006
Tel (202) 463-6036
Fax (202) 463-6067
katherine.lease@leschtlaw.com
Alan.lescht@leschtlaw.com
*Counsel for Plaintiff*