## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **TYRONE GIBSON** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:23-cv-03371-TSC |
| ) | |
| **KIRKLAND & ELLIS, LLP** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## DEFENDANT KIRKLAND & ELLIS LLP'S
## <u>LIMITED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>

ORRICK, HERRINGTON & SUTCLIFFE LLP

Francesca S. Morency (D.C. Bar No. 1617902)
Columbia Center
1152 15th Street, N.W.
Washington, DC  20005-1706
Telephone:  (202) 339-8400
Facsimile:  (202) 339-8500
fmorency@orrick.com

Lynne Hermle (*pro hac vice*)
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
lchermle@orrick.com

*Counsel for Kirkland & Ellis LLP*

Dated: January 25, 2024

## INTRODUCTION

Plaintiff was promoted twice in less than three years at Kirkland. He was promoted to Technology Analyst Level II in January 2020. First Amended Complaint (the "FAC") ¶ 12.[1] Following his first promotion, Plaintiff earned the highest and then second highest performance rating. *Id.* ¶¶ 13-14. He was promoted to Technology Support Supervisor in July 2022, over a white colleague. *Id.* ¶¶ 15, 19. As Technology Support Supervisor, he oversaw the Technology Department in Kirkland's Washington DC office and supervised 10 people. *Id.* ¶ 15.

Plaintiff was terminated in April 2023, almost a year after his second promotion. *Id.* ¶ 64. He was terminated because he inappropriately accessed proprietary firm data—without authorization—and then forwarded this proprietary firm data to his personal email address. *Id.* ¶¶ 64-65. The FAC does not—and cannot, in good faith—allege that these actions did not occur. Instead, the FAC alleges only this was a pretext, and that Plaintiff was instead terminated because he complained about racially discriminatory comments and actions by his subordinates and by his supervisor. *Id.* ¶¶ 1, 67.

Plaintiff's FAC includes claims for hostile work environment based on race and color; retaliatory hostile work environment; and family responsibilities discrimination. Plaintiff has failed to state a claim under each of these theories.

Plaintiff fails to state a claim for hostile work environment based on race and color because the single alleged race-based comment and the other alleged isolated, *de minimis* incidents having nothing to do with race, upon which he bases his claim, are insufficient, to establish a hostile work environment.

Plaintiff's retaliatory hostile work environment claims fares no better because: (1) Plaintiff

---

[1] Solely for the purposes of this motion, Kirkland assumes the well-pleaded allegations of the FAC to be true.

did not complain about race discrimination; (2) he has failed to allege requisite knowledge of his complaints; and (3) the isolated comments upon which he bases his claim are insufficiently severe or pervasive to establish a hostile work environment. Plaintiff's retaliatory hostile work environment claim under Title VII also fails because Plaintiff has not exhausted his administrative remedies with respect to that claim.

In addition, Plaintiff's claim that Kirkland discriminated against him when it asked him to adjust his schedule also fails because Plaintiff does not allege that Kirkland made its request based on any protected characteristic and a schedule change is not an adverse employment action.

## STATEMENT OF FACTS

Plaintiff filed this lawsuit against Kirkland in the Superior Court for the District of Columbia. Kirkland subsequently removed the case to this Court, ECF No. 1, and moved to dismiss Plaintiff's claims for hostile work environment based on race and color and family responsibilities discrimination. ECF No. 11. Thereafter, Plaintiff filed the FAC adding new claims for retaliatory hostile work environment. ECF No. 16.

Plaintiff worked at Kirkland for more than four years. FAC ¶ 8. During his tenure, Kirkland promoted him twice—from an entry Level I Technology Analyst to a Level II Technology Analyst, and then to Technology Support Supervisor. *Id*. ¶¶ 11, 12, 15. Notably, Kirkland promoted Plaintiff to Technology Support Supervisor over a Caucasian colleague. *Id*. ¶ 19.

Plaintiff assumed his supervisor role in July 2022, in which he supervised 10 people, and almost immediately had issues managing his team. FAC ¶¶ 15, 29. Around the time he became a supervisor, a subordinate employee, Mr. Waskowicz, allegedly told Plaintiff that "he would not work under his authority 'because [he] is Black.'" *Id*. ¶ 23. Notably, this single racial comment occurred nine months before Plaintiff's termination in April 2023. *Id*. ¶ 64. Plaintiff reported his subordinate's comment to his supervisor, Ken Kim (*id*. ¶ 16), and Mr. Kim held two meetings to

address the subordinate's behavior. *Id.* ¶¶ 24, 26.

Another subordinate, Mr. Lima, also allegedly "disrespected" and "questioned [Plaintiff's] authority." FAC ¶ 29. Plaintiff does not, however, make any race-related allegations regarding Mr. Lima. Instead, Plaintiff alleges only that, toward the end of 2022, he complained about Mr. Lima to Mr. Kim, and Mr. Kim "downplayed" his allegations, *id.* ¶ 31, and that in February 2023 he "filed a written complaint" with Human Resources about Mr. Lima's refusal to follow Plaintiff's directions and that someone from Human Resources spoke to Phillip Merriman, "Global Director of Technology" about Plaintiff's complaint. *Id.* ¶¶ 36-37. Plaintiff acknowledges that "Mr. Merriman spoke to Mr. Kim regarding Mr. Lima's actions." *Id.* ¶ 38.

Mr. Kim also supposedly called Plaintiff "stupid," (FAC ¶¶ 32, 34). Mr. Kim also allegedly "frequently targeted the three African American men on the team." *Id.* ¶ 52. In support of this allegation, Plaintiff alleges only that Mr. Kim "verbally reprimanded only Mr. Gibson and the African American/black employees and ordered them to provide additional training" in response to an incident where the laptop of a departed employee under a preservation order was "accidentally wiped." *Id.* ¶¶53-54.

Plaintiff also alleges that following the wiping incident, Mr. Waskowicz "wrote an angry email to the technology department wherein he attacked [Plaintiff] and the process [Plaintiff] had already put into place to avoid preservation issues." FAC ¶ 56.

Plaintiff also alleges that he "placed himself on the earlier shift, 7:30 AM to 4:00 PM, because he was responsible for taking his daughter to her after-school activities." FAC ¶ 17. Plaintiff alleges that on March 27, 2023, "Mr. Kim asked [Plaintiff] to change his work schedule to a later shift," that "[Plaintiff] explained he had to be on the earlier shift because he had to drive his daughter to after-school activities," and that a few days later on March 31, 2023, "Mr. Kim

directed [Plaintiff] to work the later shift starting the following week." *Id*. ¶¶ 58-60. Plaintiff "forwarded his communications with Mr. Kim to Lauren Keating, Associate [Employee] Relations Coordinator" in which he stated "[e]very week, every conversation is another opportunity for Ken [Kim] to punish me. This is not a result of a discussion this is him ordering me to take another shift. . . . This level of harassment is damaging to the spirit of the whole notion of Kirkland . . . ." *Id*. ¶ 61.

With respect to his new claims for retaliatory hostile work environment, Plaintiff alleges that: (1) "Mr. Kim directed [Plaintiff] to 'stop talking about the past' and to not speak to Human Resources regarding his complaints" (FAC ¶ 44); (2) "Sabbine Curto, Senior Director of Administration, called [Plaintiff] to work on himself going forward, and to 'stop looking in the rearview mirror.'" (*id*. ¶ 48); (3) "Mr. Merriman repeated Mr. Kim and Ms. Curto's directive: 'stop looking in the rearview mirror.'" (*id*. ¶ 49); and (4) "Tim Freund, Director of Infrastructure, called [Plaintiff] and repeated the same phrase: 'don't look in the rearview mirror'" (*id*. ¶ 50).

After failing to perform as required in his supervisory role, Kirkland placed Plaintiff on a Performance Improvement Plan ("PIP") on March 1, 2023. FAC ¶¶ 40, 49, 42. The PIP contained performance expectations, including not openly discussing employee performance issues in front of other team members, and ensuring all work order tickets were properly submitted for tech issues and all equipment was properly accounted and maintained. *Id*. ¶ 42.

On April 11, 2023, Plaintiff was terminated. FAC ¶ 64. According to Plaintiff, in connection with his termination, Kirkland stated that Plaintiff "inappropriately accessed data without proper authorization and sent proprietary information to his personal email address." *Id*. ¶ 65. Notably, nowhere in the FAC does Plaintiff deny that he accessed data without proper authorization or sent proprietary information to his personal email address.

**LEGAL STANDARD**

A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The court must accept "well-pleaded factual allegations" as true but need not "accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted).

**ARGUMENT**

I.   **Plaintiff Fails to State a Claim for a Hostile Work Environment Based on Race and Color Under Title VII, Section 1981, and the DCHRA**

   A.  *Title VII and Section 1981 (Counts 2 and 5)*

Under Title VII and Section 1981, to state a hostile work environment claim, Plaintiff must show (1) he was a member of a protected class, (2) he was subjected to unwelcome harassment, (3) the harassment was the result of his membership to the protected class, and (4) the harassment was severe or pervasive enough to objectively and subjectively alter the terms, conditions, or privileges of his employment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64-67 (1986).[2] This is a "high bar" designed to "filter out complaints attacking the ordinary tribulations of the workplace" and prevent federal civil rights statutes from "imposing 'a general civility code.'" *Joyner v. Morrison & Foerster LLP*, 2023 WL 6313194, at *7 (D.D.C. Sept. 27, 2023) (quotation marks omitted). The handful of alleged isolated, *de minimis* incidents, all but one of which are untethered to Plaintiff's race or color, are insufficient to meet this "high bar."

First, the only allegation that Plaintiff actually ties to his race is his statement that in or about July 2022, a subordinate, Mr. Waskowicz, stated that he "would not work under [Plaintiff's] authority 'because [he] is Black.'" A single statement referencing race does not amount to severe

---

[2] *Rassa v. Amtrak*, 850 F. App'x 1, 2–3 (D.C. Cir. 2021) ("In Section 1981 and Title VII cases, courts use the same framework for determining whether unlawful discrimination occurred.") (quotation marks omitted).

or pervasive treatment. *Lawson v. Pepco*, 721 F. Supp. 2d 1, 6 (D.D.C. 2010) (holding that "one comment" by a co-worker cannot, as a matter of law, amount to a hostile work environment).

Plaintiff's other allegations have nothing to do with Plaintiff's race and largely involve Plaintiff's subordinates, rather than his supervisor:

• Plaintiff alleges that in late 2022, a different subordinate, Mr. Lima, disrespected him and questioned his authority and that Plaintiff's supervisor "downplayed" Plaintiff's complaint. FAC ¶¶ 29-31. But common workplace disagreements untethered to Plaintiff's race, such as this, are insufficient to establish a hostile work environment. *Baird v. Gotbaum*, 792 F.3d 166, 171 (D.C. Cir. 2015) (holding that "occasional name-calling, rude emails, lost tempers and workplace disagreements" are insufficient).

• Plaintiff further alleges that in March 2023, following another employee's alleged failure to properly handle a laptop subject to a preservation order, Mr. Waskowicz, Plaintiff's subordinate, "wrote an angry email to the technology department wherein he attacked [Plaintiff] and the process [Plaintiff] had already put into place to avoid preservation issues." FAC ¶ 56. But again, an alleged "angry" email having nothing to do with race, will not suffice. *Baird*, 792 F.3d at 171; *Clemmons v. Acad. for Educ. Dev.*, 70 F. Supp. 3d 282, 299 (D.D.C. 2014) ("staff sending rude emails, rolling their eyes at [plaintiff] in meetings, and allegedly spreading false rumors about her" insufficient to constitute hostile work environment).

• Plaintiff also alleges that in or around December 2022 or January 2023, Mr. Kim called him "stupid" and then apologized for his comment. FAC ¶¶ 32, 34. A single alleged insult, untied to race, such as this, however, is plainly insufficient to establish a hostile work environment. *Baird*, 792 F.3d at 171.

• Plaintiff also alleges that Mr. Kim reprimanded Plaintiff and African American employees

and "ordered" African American employees to provide additional training. FAC ¶¶ 54, 57. Plaintiff does not, however, allege that Mr. Kim reprimanded the Black employees because they are Black, rather than for the legitimate business reason that team members failed to follow protocol. At most, these allegations show Plaintiff disagreed with Mr. Kim. *Franklin v. Potter*, 600 F. Supp. 2d 38, 77 (D.D.C. 2009) ("[T]he fact that an employee and his immediate supervisor repeatedly 'butted heads',…does not demonstrate a hostile work environment."). And while Plaintiff alleges that "Mr. Kim did not reprimand Mr. Lima or other non-African American/black employees for failing to follow the proper processes" (FAC ¶57), Plaintiff has failed to allege facts specifically identifying the other "non-African/American/black employees" and facts establishing that they are similarly situated to Plaintiff and thus, no inference of discrimination can be drawn therefrom. *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (an inference of discrimination cannot not be drawn from disparate treatment of comparable employees unless "all of the relevant aspects of [his] employment situation [are] 'nearly identical'" to those of the comparator); *Joyner*, 2023 WL 6313194, at *5 ("[A]t the pleading stage, Plaintiff must do more than baldly assert he was treated differently than coworkers outside his protected class. He must plausibly allege that he and these coworkers were similarly situated, meaning 'that all of the relevant aspects of [his] employment situation were nearly identical to those of the [comparator].'").

•      Furthermore, Plaintiff's allegations that Kirkland's response to his complaints were insufficient is not enough to create a hostile work environment claim. *Joyner*, 2023 WL 6313194, at *9 (dismissing Plaintiff's hostile work environment claim against law firm employer where Plaintiff disagreed with his employer's response to his complaint about his coworker).

       Even taken together, the incidents that Plaintiff alleges occurred (even if true), over an

approximately 8-month period between July 2022 and March 2023—all but one of which is untied to Plaintiff's race or color—are insufficient to state a claim for hostile work environment under Title VII or Section 1981.

**B.  DCHRA (Count 8)**

Plaintiff's claim for hostile work environment based on race and color under the DCHRA also fails. The DCHRA provides "[i]t shall further be an unlawful discriminatory practice to engage in harassment based on one or more protected characteristics specified in subsection (a)," which includes race and color. D.C. Code Ann. §§ 2-1402.11(a), (c-2)(1). The DCHRA defines harassment as: "conduct, whether direct or indirect, verbal or nonverbal, that unreasonably alters an individual's terms, conditions, or privileges of employment or has the purpose or effect of creating an intimidating, hostile, or offensive work environment" *Id*. § (c-2)(2). The DCHRA further provides:

> In determining whether conduct constitutes unlawful harassment under this subsection, a finder of fact shall consider the totality of the circumstances and view conduct based on multiple protected characteristics in totality, rather than in isolation. Conduct need not be severe or pervasive to constitute harassment and no specific number of incidents or specific level of egregiousness is required. The finder of fact shall consider the following factors; except, that this list shall not be considered exhaustive, and the presence or absence of any single factor shall not be determinative:
> (A) The frequency of the conduct;
> (B) The duration of the conduct;
> (C) The location where the conduct occurred;
> (D) Whether the conduct involved threats, slurs, epithets, stereotypes, or humiliating or degrading conduct; and
> (E) Whether any party to the conduct held a position of formal authority over or informal power relative to another party.

*Id*. § (c-2)(3).

Here, Plaintiff's allegations are insufficient to establish a claim for hostile work environment under the DCHRA because as discussed in Section I(A), only one of the allegations concern Plaintiff's race. D.C. Code Ann. §§ 2-1402.11(a) (harassment must be "based on one or

8

more protected characteristics"). Moreover, an examination of the totality of circumstances and the factors discussed in the DCHRA makes clear that Plaintiff's allegations are insufficient to state a claim. As set forth in detail above in Section I(A): (1) the alleged conduct was not frequent and is comprised of only a few isolated incidents; (2) the alleged conduct did not take place over a long period of time—it took place sporadically over an approximately 8-month period; (3) Plaintiff fails to specifically allege the location where the conduct occurred; (4) the conduct did not involve "threats, slurs, epithets, stereotypes, or humiliating or degrading conduct"; and (5) much of the alleged conduct, including the single race-related comment, was committed by subordinate employees.

## II. __Plaintiff Fails to State Claims for Retaliatory Hostile Work Environment Under Title VII and the DCHRA Counts 12 [sic] and 13 [sic]__

This Court should also dismiss Plaintiff's claims for retaliatory hostile work environment. To state a prima facie case of retaliation, Plaintiff must demonstrate: (1) he engaged in statutorily protected activity, (2) the employer took an adverse employment action against him, and (3) a causal connection existed between the two. *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) (Title VII); *Howard Univ. v. Green*, 652 A.2d 41, 45 (D.C. 1994) (DCHRA). Here, Plaintiff fails to allege: (1) that he engaged in protected activity; (2) a causal connection between his alleged protected activity and the alleged adverse employment action here—the retaliatory hostile work environment; and (3) facts sufficient to constitute a retaliatory hostile work environment.

### A. *Plaintiff Fails to Allege That He Engaged in Protected Activity*

Plaintiff's retaliatory hostile work environment claims fail because Plaintiff fails to allege that he engaged in protected activity with respect to those claims. For activity to qualify as "protected," a plaintiff is required to "alert the employer that [he] is lodging a complaint about allegedly discriminatory conduct." *Powell v. Am. Red Cross*, 518 F. Supp. 2d 24, 36 (D.D.C. 2007)

(plaintiff could not establish retaliation claim because she did not complain to her employer about racial discrimination). "[G]eneralized complaints of unfair treatment and harassment" are insufficient. *Watson v. D.C. Water & Sewer Auth.*, 2018 WL 6000201, at *15-16 (D.D.C. Nov. 15, 2018), *aff'd*, 777 F. App'x 529 (D.C. Cir. 2019).

Plaintiff does not allege that he lodged a complaint about discriminatory conduct. Instead, he alleges: "On or around March 6, 2023, [Plaintiff] again told Mr. Kim that his subordinates continue to harass and sabotage him, and no one had acted on his complaints" (FAC ¶ 43); "[Plaintiff] also told Human Resources that Mr. Kim directed him to not discuss employee concerns with human resources" (FAC ¶ 47); and "[Plaintiff] brought up concerns about Mr. Kim, the PIP, and the hostile work environment" to Mr. Merriman (FAC ¶ 49). As a result, Plaintiff has failed to meet a key element of his retaliatory hostile work environment claims—namely that his complaints related to his race. *See Williams v. Turner Sec., Inc.*, 2021 WL 4462635, at *2 (D.D.C. Sept. 29, 2021) (dismissing retaliation claim because complaining about unfair treatment is not protected activity).

### B. Plaintiff Fails to Allege a Causal Connection

Even if Plaintiff's complaints were about his race (which they were not), Plaintiff cannot demonstrate a causal connection. "[A] causal connection ... may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse ... action took place shortly after that activity." *Ricci v. Kerry*, 2013 WL 5329049, at *6 (D.D.C. Sept. 23, 2013). Here, Ms. Curto and Mr. Freund's alleged comments to Plaintiff to stop looking in the review mirror (FAC ¶¶ 48, 50) cannot serve as the basis of his retaliatory hostile work environment claims because Plaintiff has failed to plead that Ms. Curto or Mr. Freund knew that Plaintiff complained to Mr. Kim, Human Resources or Mr. Merriman. *Maloney v. Blinken*, 2021 WL 4306092, at *8-9 (D.D.C. Sept. 22, 2021) (granting motion to dismiss plaintiff's retaliation claim

because the complaint failed to allege facts that decision makers knew about plaintiff's protected activity).

### C. Plaintiff Has Failed to Allege Facts that State a Claim for Retaliatory Hostile Work Environment

"To bring a claim for a retaliatory hostile work environment, a plaintiff must allege that the employer subjected him to '[retaliatory] intimidation, ridicule, and insult of such sever[ity] or pervasive[ness] [as] to alter the conditions of [his] employment and create an abusive working environment.'" *Miles v. Kerry*, 961 F. Supp. 2d 272, 294 (D.D.C. 2013) (brackets in original) (quoting *Nicholson*, 435 F.3d at 366).[3]

The entirety of Plaintiff's retaliatory hostile work environment is comprised of five comments: a comment by Mr. Kim to "stop talking about the past" and "to not speak to Human Resources regarding his complaints" and comments that Ms. Curto, Mr. Merriman, and Mr. Freund each made telling Plaintiff to stop looking "in the rearview mirror." FAC ¶ 44, 48-50. These five isolated comments, which are, at best, ambiguous as to a retaliatory animus[4], do not come close to alleging that Kirkland subjected plaintiff to retaliatory intimidation, ridicule, and insult of such severity or pervasiveness to alter the conditions of his employment and create an abusive working environment. *See Harris v. Wackenhut Servs., Inc.*, 419 F. App'x 1, 1-2 (D.C. Cir. 2011) ("three racially motivated comments directed at [the plaintiff] ... do not amount to actionable

---

[3] D.C. Code Ann. §§ 2-1402.11(c-2)(3)'s provision that "[c]onduct need not be severe or pervasive to constitute harassment" does not apply to Plaintiff's claims for retaliatory hostile work environment because those claims are governed by the DCHRA's retaliation sub-section, D.C. Code Ann. § 2-1402.61, rather than its discrimination subsection, D.C. Code Ann. §§ 2-1402.11.

[4] Viewing these comments in connection with Plaintiff's other retaliatory harassment allegations suggests that many of the alleged remarks were nothing more than advice to Plaintiff to stop focusing on his past performance issues and to improve his performance moving forward. *See, e.g.*, FAC ¶ 46 (connecting the alleged retaliatory comments to Plaintiff's Performance Improvement Plan (PIP)); FAC ¶ 47 ("That same week, Sabine Curto, Senior Director of Administration, called Mr. Gibson to **work on himself going forward**…." (emphasis added)).

harassment"); *Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 98 (D.D.C. 2007) (teasing, ambiguous comments, staring and attempts to make eye contact, and four isolated touching incidents did not amount to a hostile work environment).

### III.     Plaintiff's Retaliatory Hostile Work Environment Under Title VII Should Be Dismissed Because Plaintiff Failed to Exhaust Administrative Remedies (Count 12 [sic])

Plaintiff's retaliatory hostile work environment claim under Title VII should also be dismissed because Plaintiff failed to exhaust administrative remedies. Before filing suit in court, Title VII plaintiffs "must exhaust their administrative remedies by filing an EEOC charge and giving that agency a chance to act on it." *Marshall v. Fed. Express Corp*., 130 F.3d 1095, 1098 (D.C. Cir. 1997). A court addresses a motion to dismiss for failure to exhaust Title VII's administrative remedies under Rule 12(b)(6) and can consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, [or] matters of which [a court] may take judicial notice" *Azumah v. Yellen*, 2021 WL 3784323, at *3 (D.D.C. Aug. 26, 2021) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)). The FAC refers to the Charge and thus, Kirkland requests that it be judicially noticed.

In the Charge's box labeled "DISCRIMINATION BASED ON", Plaintiff indicates "Age, Race, Retaliation" but not "retaliatory hostile work environment." Exhibit A. Moreover, the allegations upon which Plaintiff's claims for retaliatory hostile work environment are purportedly based are not mentioned in the Charge. *Id*.

Retaliatory hostile work environment is a theory of relief that is separate and distinct from a discrete retaliation claim. *See Brooks v. Grundmann*, 748 F.3d 1273, 1278-79 (D.C. Cir. 2014) (holding that plaintiff's discrete retaliation claim and her retaliatory hostile work environment claim—were "two distinct theories of relief"). "Because a hostile work environment claim and a discrete [retaliation] claim are 'different in kind,' exhausting one does not exhaust the other."

*Moore v. U.S. Dep't of State*, 351 F. Supp. 3d 76, 96 (D.D.C. 2019) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 (2002)). Thus, to satisfy the exhaustion requirement, Plaintiff was required to allege a retaliatory hostile work environment theory of liability and facts supporting same in his EEOC charge. *See Park v. Howard Univ.*, 71 F.3d 904, 908 (D.C. Cir. 1995) (holding that plaintiff's claim for hostile work environment was barred for failure to exhaust because plaintiff's charge "not only lacks the words 'hostile work environment,' but also lacks any factual allegations supporting such a claim"). This, Plaintiff failed to do.

### IV.    Plaintiff Fails to State a Claim for Discrimination Based on Family Responsibilities (Count 12)

Plaintiff also raises a claim of unlawful discrimination based on family responsibilities under the DCHRA because Kirkland allegedly changed his work schedule thereby interfering with his ability to pick up his daughter from school.[5] D.C. Code § 2-1402.11 *et seq*. To state a claim for family responsibilities discrimination, Plaintiff must offer facts sufficient to show that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination based on his family responsibilities. *Abebio v. G4S Gov't Sols., Inc.*, 72 F. Supp. 3d 254, 257 (D.D.C. 2014). Plaintiff fails to adequately allege that he suffered an adverse employment action or facts that would give rise to an inference of discrimination.

An employment action is only adverse if it results in a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Baird v. Gotbaum*, 662 F.3d 1246, 1248 (D.C. Cir. 2011). Schedule changes, without more, such as a reduction in salary, pay

---

[5] Count 12 states "Family Responsibilities Discrimination – Hostile Work Environment" but the substantive allegations only relate to discrete discrimination. FAC Count 12, ¶¶ 126-130.

grade, or benefits, are not enough to constitute an "adverse employment action." *Mohmand v. Broad. Bd. of Governors*, 2018 WL 4705800, at *5 (D.D.C. Sept. 30, 2018) (schedule change did not rise to the level of an adverse action); *Burke v. Inter-Con Sec. Sys., Inc*., 926 F. Supp. 2d 352, 358 (D.D.C. 2013) (same). And there is no requirement under the DCHRA that employers accommodate an employee's schedule for family responsibilities—which is exactly what Plaintiff is alleging here. *Wallace v. Skadden, Arps, Slate, Meagher & Flom LLP*, 799 A.2d 381, 386 (D.C. 2002) (quoting *Simpson v. District of Columbia Office of Human Rights*, 597 A.2d 392, 405 (D.C. 1991) (The DCHRA "contains no explicit requirement that an employer accommodate an employee's working schedule so that the employee can discharge his or her 'family responsibilities.'")).

Even if Plaintiff suffered an adverse employment action (which he did not), Plaintiff does not allege any facts that would give rise to an inference of discrimination. Plaintiff does not allege, for example, that he was asked to work a different shift because Mr. Kim wanted to prevent him from performing his family responsibilities or that his status as a parent and responsibilities to pick up his daughter were a motivating factor in Mr. Kim asking him to change his schedule. *Abebio*, 72 F. Supp. 3d at 259 (dismissing claim where plaintiff did "not allege that any of defendant's employees told plaintiff that her childcare duties were the reason for—or even a contributing factor to—her termination"); *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 88-89 (D.D.C. 2014) (dismissing claim where plaintiff did not allege any facts from which the court could infer the denial of plaintiff's transfer request, denial of a modest schedule change, or the issuance of a warning letter were the result of discrimination based on his family responsibilities).

Instead, Plaintiff summarizes a conversation in which Mr. Kim asked him to change his schedule, a conversation that does not include any facts or statements suggesting that Mr. Kim

changed the schedule because Plaintiff is a parent or had childcare responsibilities. FAC ¶¶ 58-60. Without alleging the critical third element—that Plaintiff suffered adverse employment action because of his family responsibility—his claim fails. *Abebio*, 72 F. Supp. 3d at 259 ("'there is nothing to support a causal inference' that plaintiff's family responsibilities were defendant's motivating factor in her termination, 'other than the plaintiff's conclusory allegations'"); *Lewis v. Exelon Corp.*, 2022 WL 1556329, at *2 (D.D.C. May 17, 2022) (dismissing DCHRA claim where plaintiff failed to sufficiently allege a connection between the adverse action and his disability and noting plaintiff failed to allege that defendant criticized him for taking medical leave or ever received negative comments about his disability).

## <u>CONCLUSION</u>

For the reasons discussed above, this Court should grant Kirkland's Limited Motion to Dismiss and dismiss Count 2 (Title VII Race and Color Discrimination – Hostile Work Environment), Count 5 (Section 1981 Race and Color Discrimination – Hostile Work Environment), Count 8 (DCHRA Race and Color Discrimination – Hostile Work Environment), Count 12 (DCHRA Family Responsibilities Discrimination – Hostile Work Environment), Count 12 [sic] (Title VII Retaliation for Protected Activity – Hostile Work Environment), and Count 13 [sic] (DCHRA Retaliation for Protected Activity – Hostile Work Environment) with prejudice.

Dated:  January 25, 2024      Respectfully submitted,

            /s/Francesca S. Morency
            Francesca S. Morency (D.C. Bar No. 1617902)
            Orrick, Herrington & Sutcliffe LLP
            Columbia Center
            1152 15th Street, N.W.
            Washington, DC  20005-1706
            Telephone:  (202) 339-8400
            Facsimile:  (202) 339-8500
            fmorency@orrick.com

            Lynne Hermle (*pro hac vice*)
            Orrick, Herrington & Sutcliffe LLP
            1000 Marsh Road
            Menlo Park, CA 94025
            Telephone: (650) 614-7400
            Facsimile: (650) 614-7401
            lchermle@orrick.com

            *Counsel for Kirkland & Ellis LLP*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2023, a copy of the foregoing MEMORANDUM OF

POINTS AND AUTHORITIES IN SUPPORT OF LIMITED MOTION DISMISS PLAINTIFF'S

AMENDED COMPLAINT was served on all parties of record.


                                    /s/*Francesca S. Morency*
                                    Francesca S. Morency (D.C. Bar No. 1617902)