**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ──────────────────────────── ) | |
| TYRONE GIBSON, ) | |
| ) | Civil Action No.: 1:23-cv-03371-TSC |
| Plaintiff, ) | |
| ) | Date: February 8, 2024 |
| v. ) | |
| ) | |
| KIRKLAND & ELLIS, LLP, ) | |
| ) | |
| Defendant. ) | |
| ──────────────────────────── ) | |

<u>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S LIMITED**</u>
<u>**MOTION TO DISMISS AMENDED COMPLAINT**</u>

Immediately following a promotion in July 2022, Plaintiff Tyrone Gibson's management, colleagues and subordinates began to discriminate against him based on his race (African American) and color (Black). During his first week as a supervisor, Mr. Gibson's subordinate told him he would not work under his authority "because he is Black." Mr. Gibson promptly reported this racist comment to his supervisor. Following his report, as relevant, Defendant Kirkland & Ellis, LLP subjected Mr. Gibson to a hostile work environment that lasted nine months and culminated in his termination. During that time, Mr. Gibson sought support from his supervisor over and over again, to no avail.

In March 2023, about seven months after the discrimination and subsequent retaliation began, Mr. Gibson told his supervisor ***again*** about the ongoing discrimination and harassment. In response, Mr. Gibson's supervisor, and other high-level employees—apparently fed up with these complaints—told Mr. Gibson to "stop talking about the past." Within six weeks, Defendant terminated Mr. Gibson's employment. This is classic retaliation, rooted in discriminatory conduct that came at Mr. Gibson from all angles.

Defendant moves to dismiss the hostile work environment (Counts 2, 5, 8, 12 (sic)[1], 13 (sic)) and family responsibilities (Count 12) claims. The allegations underlying each of those claims are deeply intertwined with the unchallenged claims. Accepting the allegations in the Complaint as true, as is required at this stage of litigation, Mr. Gibson has alleged a series of pervasive actions and longstanding inaction by Defendant, adequately pleading his hostile work environment claims; and he alleged retaliatory conduct that directly targeted his family responsibilities and thus raises an inference of discriminatory animus based on family responsibilities, adequately pleading his family responsibilities claim.

Based on the following, Mr. Gibson respectfully requests that the Court deny Defendant's Limited Motion to Dismiss in its entirety.

## FACTUAL BACKGROUND

### *Background.*

In December 2018, Defendant hired Mr. Gibson (African American/Black) as a Technology Analyst, Level I. First Amended Complaint ("FAC") ¶ 11. In January 2020, Defendant promoted Mr. Gibson and, in 2020 and 2021, awarded him the highest and second highest performance ratings, respectively. FAC ¶¶ 12-14. In July 2022, Defendant again promoted Mr. Gibson to Technology Support Supervisor, to oversee the Washington, D.C. technology department and supervise ten employees. FAC ¶ 15.

### *Mr. Gibson has primary family responsibilities.*

Mr. Gibson is a divorced father of a pre-teenage daughter. FAC ¶ 19. He is responsible for taking his daughter to and from her after-school activities four days per week. FAC ¶ 9. As a

---

[1] Plaintiff inadvertently used "Claim 12" for two separate claims in his Amended Complaint. Following the Court's decision on Defendant's Motion to Dismiss, Mr. Gibson intends to seek leave to file a corrected complaint with the proper count numbers as needed. Defendant consents.

Technology Analyst, he left work by 4:45 PM on these days without issue. FAC ¶ 17. When Defendant promoted Mr. Gibson to Supervisor, Mr. Gibson worked an earlier shift from 7:30 AM – 4:00 PM to accommodate his caregiving responsibilities. FAC ¶ 17, 36, 58.

*Defendant's racial and retaliatory harassment begins.*

After Mr. Gibson's July 2022 promotion, Mr. Gibson's subordinate employee, Sam Waskowicz (Caucasian), told Mr. Gibson that he would not work for him "because [Mr. Gibson] is Black." FAC ¶ 23. Mr. Gibson reported this comment to his supervisor, Kenneth Kim (Asian). FAC ¶ 24. Mr. Kim refused to address the racist comment with Mr. Waskowicz. FAC ¶ ¶ 26-27. This comment and Mr. Kim's inaction was the start of the hostile work environment that Mr. Gibson endured over the next nine months until Defendant terminated his employment. FAC ¶¶ 29, 32, 35, 40-42, 51-60, 64.

Another subordinate, Michel Lima (non-African American/Black, race otherwise unknown), also questioned Mr. Gibson's authority and repeatedly disregarded Mr. Gibson's directions upon joining Mr. Gibson's team in November 2022. FAC ¶ 29. In November and December 2022, Mr. Gibson complained to Mr. Kim about Mr. Lima and his other subordinates' disrespectful conduct. FAC ¶ 30. Again, Mr. Kim disregarded the racism that Mr. Gibson was trying to address. FAC ¶ 31. Instead, Mr. Kim questioned and downplayed Mr. Gibson's allegations and suggested that Mr. Gibson was in the wrong. FAC ¶ 31.

In December 2022 or January 2023, Mr. Kim called Mr. Gibson "stupid," escalating his direct participation in the harassment. FAC ¶ 32. Mr. Gibson complained to Human Resources about Mr. Kim. FAC ¶ 33. Mr. Kim, Mr. Waskowicz, and Mr. Lima's harassment against Mr. Gibson escalated. FAC ¶¶ 35, 40-42, 51-60, 64.

In February 2023, Mr. Lima openly defied Mr. Gibson's instructions. FAC ¶ 35. Because Mr. Kim had not acted on his earlier complaints, Mr. Gibson filed a written complaint with Human Resources about Mr. Lima. FAC ¶ 36. The next week, Mr. Kim placed Mr. Gibson on a Performance Improvement Plan (PIP), despite no previous issues with Mr. Gibson's performance. FAC ¶¶ 40-41. On March 6, 2023, Mr. Gibson again complained to Mr. Kim that his subordinate employees continued to harass and sabotage his team and performance. FAC ¶ 3. Mr. Kim directed him to "stop talking about the past" and to not speak to Human Resources regarding his complaints. FAC ¶ 46.

On March 13, 2023, Mr. Gibson sent a written memorandum to the Human Resources Department, including Kathleen Stone, Director of Human Resources, and Julie Marcus, Chief Human Resources Officer. FAC ¶¶ 36, 45-47. Mr. Gibson highlighted Mr. Kim's refusal to act on his complaints since July 2022, and questioned the purpose of the PIP and his alleged deficient performance. FAC ¶¶ 45-47. That same week, three high-level employees, Sabbine Curto, Senior Director of Administration, Phillip Merriman, Global Director of Technology, and Tim Freund, Director of Infrastructure, separately directed Mr. Gibson to "stop looking in the rearview mirror," implying that M. Gibson should stop reporting discrimination and harassment. FAC ¶¶ 37, 48-50.

Also in March 2023, Mr. Waskowicz, in front of Mr. Merriman, boldly asserted that he "did not have to listen to [Mr. Gibson]," and that Mr. Gibson was "not his boss anymore." FAC ¶ 51. Then, Mr. Kim learned that someone within the technology department improperly wiped a former employee's laptop. FAC ¶ 53. Mr. Kim reprimanded only the three African American employees in the department, including Mr. Gibson, and mandated additional preservation training. FAC ¶ 54. It was determined that Mr. Lima was responsible for the error, but Mr. Kim never reprimanded Mr. Lima nor mandated the same training for him. FAC ¶¶ 56-57.

_Defendant targets Mr. Gibson's caregiving duties._

On or around March 27, 2023, Mr. Kim directed Mr. Gibson to change his work schedule to a later shift. FAC ¶ 58. Mr. Gibson replied that he could not work the later shift because of his caregiving schedule. FAC ¶ 59. Mr. Kim ignored Mr. Gibson's concern, and without justification for the switch, directed Mr. Gibson to work the later shift the next week. FAC ¶ 60.

On April 1, 2023, Mr. Gibson forwarded the email thread between himself and Mr. Kim wherein Mr. Kim changed his schedule to Employee Relations, adding:

> Every week, every conversation is another opportunity for Ken [Kim] to punish me. This is not a result of a discussion this is him ordering me to take another shift. This has gotten so out of hand; I told him I have family obligations with my daughter every day but Thursday. This is why my position is not savable, my job is not secure. This level of harassment is damaging to the spirit and the whole notion of Kirkland and Ellis.

FAC ¶ 61.

_Defendant wrongfully terminates Mr. Gibson's employment._

On April 10, 2023, Mr. Gibson met with Human Resources to again report the racist behavior he experienced from his team. FAC ¶¶ 62-63. Mr. Gibson never learned whether Defendant investigated his complaint because the next day, April 11, 2023, Mr. Kim issued Mr. Gibson a Separation Agreement, effective that same day. FAC ¶ 64. Mr. Kim fabricated reasons to terminate Mr. Gibson as pretext for discrimination and retaliation.

## LEGAL STANDARD

A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. _Hishon v. King & Spalding_, 467 U.S. 69, 73 (1984) (citing _Conley v. Gibson_, 355 U.S. 41 (1957)). In deciding a motion under Rule 12(b)(6), the court must liberally construe the complaint in favor of the plaintiff, "who must be granted the benefit of all inferences that can be derived from the facts alleged." _Ragsdale v. Holder_,

668 F. Supp. 2d 7, 15 (D.D.C. 2009) (quoting *Schuler v. U.S.*, 617 F. 2d 605, 608 (D.C. Cir. 1979)).

The purpose of a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the complaint. *Herron v. Fannie Mae*, 861 F. 3d 160 (D.C. Cir. 2017). So long as the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the complaint will survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Rouse v. Berry*, No. 06-2088 (RWR), 2010 WL 325569, at *3 (D.D.C. Jan. 29, 2010) ("The D.C. Circuit has long recognized the ease with which a plaintiff claiming employment discrimination can survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon relief may be granted… 'I was turned down for a job because of my race' is all a complaint has to state to survive a motion to dismiss under [Rule] 12(b)(6).").

## ARGUMENT

### I.    Mr. Gibson Adequately Pled a Hostile Work Environment Based on Retaliation Under Title VII (Count 12 [sic]) and the DCHRA (Count 13 [sic]).

Mr. Gibson has adequately alleged retaliatory hostile work environment claims under Title VII and DCHRA. To state a prima facie case of retaliation, Mr. Gibson must demonstrate: (1) he engaged in statutorily protected activity; (2) the employer took an adverse employment action against him; and (3) a causal connection existed between the two. *Hussain v. Nicholson*, 435 F. 3d 359, 366 (D.C. Cir. 2006) (Title VII); *Howard Univ. v. Green*, 652 A.2d 41, 45 (D.C. 1994) (DCHRA). This Circuit has recognized that a hostile work environment can amount to a materially adverse action and therefore can satisfy the second element of a retaliation claim. *See Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011); *Hussain*, 435 F. 3d at 366.

Accepting the allegations in the Complaint as true, as is required at this stage in litigation, Mr. Gibson has adequately alleged conduct that was so pervasive that it altered the conditions of

his employment. Those allegations include the following conduct, which all occurred during a nine-month period:

- In July 2022, Mr. Waskowicz (Caucasian), Mr. Gibson's subordinate, told Mr. Gibson that he "would not work under [Mr. Gibson's] authority 'because [he] is Black.'" FAC ¶ 23.

- When Mr. Gibson reported the comment to his supervisor Mr. Kim (Asian), Mr. Kim questioned whether Mr. Waskowicz made the comment and failed to address it with Mr. Waskowicz. FAC ¶¶ 24-27.

- In November 2022, Michel Lima (not African American/Black), another subordinate, disrespected Mr. Gibson's authority and disregarded his instructions. FAC ¶¶ 28-29.

- When Mr. Gibson complained to Mr. Kim about Mr. Lima's disrespectful and disruptive behavior, Mr. Kim downplayed his allegations and suggested Mr. Gibson was in the wrong. FAC ¶¶ 30-31.

- In December 2022 or January 2023, Mr. Kim called Mr. Gibson "stupid." FAC ¶ 32.

- In February 2023, Mr. Lima openly defied Mr. Gibson's direction to perform inventory management and other job duties in line with his position, resulting in Mr. Gibson having to take on these duties. FAC ¶ 35.

- On March 1, 2023, Mr. Kim placed Mr. Gibson on a PIP, despite never having brought up concerns with his performance. FAC ¶¶ 40-42.

- On March 6, 2023, in response to Mr. Gibson again complaining about his subordinate employees, Mr. Kim admonished him to "stop talking about the past." FAC ¶¶ 43-44.

- On March 13, 2023, Mr. Waskowicz, in front of a high-level executive employee, told Mr. Gibson he "did not have to listen to [him]" and that Mr. Gibson was "not his boss anymore." FAC ¶ 51.

- During the week of March 13, 2023, the Senior Director of Administration, Ms. Curto, the Global Director of Technology, Mr. Merriman, and the Director of Infrastructure, Tim Freund, separately directed Mr. Gibson to "stop looking in the rearview mirror," referring to his complaints of discrimination. FAC ¶¶ 44, 48-50

- On or around March 20, 2023, Mr. Kim learned that someone within the technology department improperly wiped a former employee's laptop. FAC ¶ 53. He reprimanded only the three African American employees in the department, including Mr. Gibson, and mandated additional training for them. ¶ 54. Mr. Kim later learned that Mr. Lima was responsible for failing to follow the proper process. FAC ¶¶ 56-57. He neither reprimanded Mr. Lima nor mandated the same training. FAC ¶ 57.

- On March 27, 2023, Mr. Kim directed Mr. Gibson to change his schedule to the later shift, without explanation. FAC ¶ 58. As a result, Mr. Gibson could not take his daughter to and from her after-school activities. FAC ¶¶ 59-60.

- On April 11, 2023, Defendant terminated Mr. Gibson's employment, effective that same day. FAC ¶ 64.

**A. Mr. Gibson Engaged in Protected Activity.**

Mr. Gibson first engaged in protected activity in July 2022. FAC ¶ 23. After Mr. Waskowicz told Mr. Gibson he would not work under him "because he is Black," Mr. Gibson immediately reported this "racist comment" to Mr. Kim. FAC ¶ 24 (emphasis added). Mr. Gibson communicated his belief that Mr. Waskowicz was acting in a discriminatory manner, thus engaging in protected

oppositional activity. *See Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) ("When an employee communicates to her employer a belief that the employer has engaged in … a form of employment discrimination, that communication virtually always 'constitutes the employee's *opposition* to the activity.'") (emphasis in original); *Coleman v. Potomac Elec. Power Co.,* 422 F. Supp. 2d 209, 212 (D.D.C. 2006) (Statutorily protected activities include "opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment.") (citation omitted). Mr. Gibson then engaged in subsequent instances of protected activity, complaining about his subordinates' disrespect, his supervisor's derogatory comments, and continued disregard for his repeated complaints. *See* FAC ¶ 30 (November and December 2022); ¶ 33 (January 2023); ¶ 36 (February 26, 2023); ¶ 43 (March 6, 2023); ¶ 45 (March 13, 2023); ¶ 61 (April 1, 2023).

## B. Defendant Created a Retaliatory Hostile Work Environment for Mr. Gibson.

In response to Mr. Gibson's repeated complaints, Defendant retaliated against him, in part by creating a hostile work environment. *See Baird*, 662 F.3d at 1250. Mr. Gibson adequately alleged enough conduct and overall negative treatment in the workplace to withstand Defendant's motion to dismiss.

Further, "'[a]dverse actions' in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim." *Baloch v. Kempthorne*, 550 F. 3d 1191, 1198 n.4 (D.C. Cir. 2008). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse," meaning "[the action] well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (internal quotation marks omitted). In March 2023, on four occasions, Mr. Gibson's direct supervisor and three high-level executive employees threatened Mr. Gibson to "stop talking about the past," and "stop looking in the rearview mirror,"

referencing his complaints of discrimination and harassment. FAC ¶¶ 44, 48-50. At that point, Mr.

Gibson submitted two written complaints, on February 26, and March 13, 2023, respectively, less

than a month before these threats. FAC ¶¶ 36, 45-47. These comments were meant to dissuade Mr.

Gibson from pursuing his complaints, in direct violation of Title VII's anti-retaliation provision.

*See Burlington N.*, 548 U.S. 53, 68 ("The antiretaliation provision seeks to prevent employer

interference with unfettered access to Title VII's remedial mechanisms. It does so by prohibiting

employer actions that are likely to deter victims of discrimination from complaining to the EEOC,

the courts, and their employees.") (internal citations omitted); *see also Rattigan v. Holder*, 604 F.

Supp. 2d 33, 52 (D.C. Cir. 2015) ("Under *Burlington*, the touchstone for 'material adversity' is

deterrence.") (citing *Burling N.*, 548 U.S. at 68.).

In *Powell v. Lockhart*, this Court denied defendant's motion for summary judgment on the

plaintiff's retaliatory hostile work environment claim, relying primarily on evidence that after

learning of the complaint, plaintiff's supervisor began loudly slamming office furniture, that his

shouting and criticism of plaintiff accelerated, and he withdrew support for plaintiff's promotion.

629 F. Supp. 2d 23, 49 (D.D.C. 2009). This same supervisor also warned her against bringing

grievances to others within the Agency. *Id.* Mr. Gibson alleges similar facts. After he first

complained of discrimination, Mr. Kim's treatment of Mr. Gibson deteriorated. Mr. Kim

downplayed and minimized Mr. Gibson's complaints of discrimination, called Mr. Gibson

"stupid," allowed his subordinate employees to openly defy his instructions, placed him on a PIP,

and reprimanded him for the mistake of another employee. FAC ¶¶ 24-27, 32, 35, 40-42, 53-57.

After Mr. Gibson finally went to human resources, Mr. Kim admonished him to "stop talking about

the past," and shortly thereafter, terminated his employment. FAC ¶¶ 43-44. Mr. Gibson plausibly

alleged a retaliatory hostile work environment. *See Williams v. W.D. Sports, N.M., Inc.,* 497 F. 3d

1079, 1090 (10th Cir. 2007) ("We do not doubt that a reasonable employee could well find ... a combination of threats and actions taken with the design of imposing both economic and psychological harm sufficient to dissuade him or her from making or supporting a charge of discrimination."); *Porter v. Shah*, 606 F. 3d 809, 819 (D.C. Cir. 2010) (a negative written assessment and PIP can constitute a retaliatory adverse action because these affect plaintiff's position, grade level, salary or promotion opportunity); *Mogenhan v. Napolitano*, 613 F. 3d 1162, 1166-67 (D.C. Cir. 2010) (denying summary judgment because a reasonable jury could decide that posting plaintiff's EEO complaint on the employer's intranet where other employees could access it and thus ostracize the employee, and increasing her work load so she would be "too busy to file complaints" could reasonably dissuade employee from filing a charge of discrimination); *Mitchell v. District of Columbia*, 304 F. Supp. 3d 110, 117-18 (D.D.C. 2018) (employer publicly posting that the employee is barred from the office and could not attend a training class would be sufficiently humiliating to dissuade an employee from complaining about discrimination); *Test v. Holder,* 614 F. Supp. 2d 73, 83–84 (D.D.C. 2009) (denying employer's motion for summary judgment based on the plaintiff's allegations that his supervisors scheduled meetings when he would be unable to attend, verbally assaulted him, undermined his authority, issued an unfavorable performance evaluation, denied a performance award and refused to discuss his "individual development plan" with him because the combined effect of these actions could "dissuade a reasonable worker from initiating EEO review.").

### C. A Causal Connection Exists Between Mr. Gibson's Complaint and the Retaliatory Hostile Work Environment.

At the pleading stage, Mr. Gibson "merely needs to establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small*, 271 F. 3d 285, 299 (D.C. Cir. 2001); *see Jones v. Bernanke*, 685 F. Supp. 2d 31, 40 (D.D.C. 2010) (at the motion to dismiss stage, the hurdle of

alleging a causal link is not a high one; plaintiff must allege they were subject to "harassing, reckless, wrongful, willful and malicious treatment ... by the [d]efendants solely because [they] made complaints of sexual harassment and objected to discriminatory conduct); *see also Rochon v. Gonzales*, 438 F. 3d 1211, 1220 (D.C. Cir. 2006) (observing that "in order to survive a motion to dismiss, 'all [the] complaint has to say' is 'the Government retaliated against me because I engaged in protected activity'") (quoting *Sparrow v. United Air Lines, Inc.*, 216 F. 3d 1111, 1114 (D.C. Cir. 2000)); *accord Beckham v. Nat'l R.R. Passenger Corp.*, 590 F. Supp. 2d 82, 89 (D.D.C. 2008) (denying the defendant's motion to dismiss a retaliation claim because the plaintiff "satisfied her burden by alleging that she was denied benefits because of her opposition to actions made unlawful by Title VII"); *Vance v. Chao*, 496 F. Supp. 2d 182, 187 (D.D.C. 2007) (denying the defendant's motion to dismiss because "[a]t this early stage of the proceedings, [the] plaintiff can meet her prima facie burden simply by alleging that the adverse actions were caused by her protected activity").

Mr. Kim told Mr. Gibson to "stop talking about the past," one week after he complained about his subordinates' continued disrespectful behavior, including Mr. Waskowicz's racist comment. FAC ¶¶ 24-25, 44; *See, e.g., Brownfield v. Bair*, 541 F. Supp. 2d 35, 45 (D.D.C. 2008) (finding that less than two months between protected activity and adverse action was sufficient to establish a causal connection); *Goos v. Nat'l Ass'n of Realtors*, 715 F. Supp. 2, 4 (D.D.C. 1989) (finding that just over five weeks between the protected action and the plaintiff's termination was short enough time lapse to infer a causal connection). Then, Mr. Gibson filed a written complaint to HR about his PIP and "Mr. Kim's refusal to act on his complaints." FAC ¶ 45. That same week, Ms. Curto, Mr. Merriman, and Mr. Freund directed him to "stop looking in the rearview mirror." FAC ¶¶ 48, 50. It is plausible that these individuals told Mr. Gibson to "stop

looking in the rearview mirror" because of their knowledge of his prior complaints of discrimination and harassment by his subordinates and supervisor. *Ashcroft*, 556 U.S. 678 ("So long as the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face, the complaint will survive a motion to dismiss.") (internal quotations omitted).

As such, Mr. Gibson's retaliatory hostile work environment claim should not be dismissed.

## II.    Mr. Gibson Exhausted his Administrative Remedies with Regard to his Retaliatory Hostile Work Environment Claim (Counts 12 [sic] and 13 [sic]).

Administrative exhaustion requires an aggrieved party to file a timely charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC). *Washington v. Washington Metro. Area Transit Auth.*, 160 F. 3d 750, 752 (D.C. Cir. 1998). Any civil action that follows the charge may only include claims that are 'like or reasonably related to the allegations of the charge and grow[] out of such allegations.'" *Park v. Howard Univ.*, 71 F. 3d 904, 907 (D.C. Cir. 1995) (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)). Claims raised under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, "must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Id*. (quoting *Chisholm v. U.S. Postal Serv.*, 665 F. 2d 482, 491 (4th Cir. 1981)).

This Court has held that plaintiffs have exhausted their administrative remedies as to claims not specifically made in a charge where it was clear that the administrative body would be aware of those claims during the investigation of the charge. *See, e.g.*, *Test v. Holder*, 614 F. Supp. 2d 73, 83 (D.D.C. 2009) (holding that plaintiff exhausted certain retaliation claims by presenting them to the EEOC during the course of its investigation into separate but related claims); *see also Lane v. Tschetter*, No. CIV.A.05 1414 EGS, 2007 WL 2007493, at *5 (D.D.C. July 10, 2007) (holding that employee exhausted a claim because it "would be reasonably expected to surface during an

investigation of her EEO charge."); *Perry v. Clinton*, 674 F. Supp. 2d 110, 118 (D.D.C. 2009) (holding that that "[t]he EEO investigation that followed Perry's complaint demonstrates [the] connection" between the charged complaint and other allegations).

Mr. Gibson alleged Defendant discriminated against him based on "Age, Race, Retaliation," from January 1, 2021, through April 11, 2023. Ex. A, EEO Charge. Mr. Gibson's retaliatory hostile work environment claims arises out of the same accepted charges, including but not limited to his hostile work environment claim based on race, and the discrete acts which also make up his retaliatory hostile work environment claim. *See* Section I, *supra*, and III (A) – (C), *infra*; *Baird*, 662 F.3d at 1252 (Plaintiff can plead "discrete acts" as part of the hostile work environment claim that are adequately linked). Therefore, the core part of his retaliatory hostile work environment is "like or reasonably related to the allegations of the charge and growing out of such allegations" *Park*, 71 F. 3d at 907.

Mr. Gibson included a retaliation claim and a hostile work environment claim with substantially overlapping factual bases in his administrative complaint. The claims are deeply intertwined, and clearly "like or related." Accordingly, Mr. Gibson exhausted his Retaliatory Hostile Work Environment Claims.

**III.**    **Mr. Gibson Adequately Pled a Hostile Work Environment Based on Race and Color (Counts 2, 5, and 8).**

A plaintiff will prevail on a hostile work environment claim if he establishes that he was subjected to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of his work environment. *Baloch*, 550 F. 3d at 1201, *see also Oncale v. Sundowner Offshore Servs. Inc.,* 523 U.S. 75, 81–82 (1998) ("The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and

relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.").

Accepting the allegations in the Complaint as true, as is required at this stage in litigation, Mr. Gibson has adequately alleged conduct that was so pervasive that it altered the conditions of his employment. Those allegations include the conduct outlines in the Statement of Facts and Section I, *supra*.

**A.  Mr. Gibson Adequately Pled a Hostile Work Environment Under Title VII (Count 2).**

To establish a hostile work environment claim under Title VII, a plaintiff must show: "(1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment occurred because of [his] protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the [defendant] knew or should have known of the harassment in question but nonetheless failed to either take steps to prevent it or afford [him] prompt remedial action." *Lilly v. District of Columbia*, 657 F. Supp. 3d 65, 77 (D.D.C. 2023).

Courts have found actions similar to those alleged by Mr. Gibson to be sufficient to support claims of a hostile work environment, in part because the harassing comments and general disrespect and disregard for his authority occurred frequently over the course of nine months. *See Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014) ("Severity and pervasiveness are complementary factors and often go hand-in-hand, but a hostile work environment claim could be satisfied with one or the other."). In *Wise v. Ferriero*, the Court denied a motion to dismiss a hostile work environment claim when the plaintiff alleged that a co-worker made a racial slur toward him, identified incidents including threats of discipline based on false accusations, and was singled out and excluded from trainings and denied promotions over the course of a few years. 42 F. Supp. 2d 120, 125-26 (D.D.C. 2012). Mr. Gibson's complaint of hostile work environment includes at least

one explicitly race-based made by a non-supervisor, followed by frequent incidents of harassment, including by his supervisor, over the course of nine months, such that it was pervasive. *Id.*

Mr. Gibson has alleged enough conduct and overall negative treatment in the workplace to withstand Defendant's motion to dismiss. *See e.g., Jones v. Granholm*, No. 20-0472 (CKK), 2021 WL 2530677, at *14 (D.D.C. June 21, 2021) (denying a motion to dismiss hostile work environment claim when plaintiff alleged her supervisor issued her a counseling memorandum, a negative performance review, placed plaintiff on a performance improvement plan, and her supervisor "sabotaged" her work product); *Behrens v. Tillerson*, 264 F. Supp. 3d 273, 280 (D.D.C. 2017) (holding that a plaintiff plausibly alleged a hostile work environment claim by alleging supervisors denied access to high-level assignments, threatened her with termination, forbade her from speaking with high-level government officials, and unfairly targeted her with negative performance reviews and warnings over the course of several years); *Powell v. Castaneda,* 390 F. Supp. 2d 1, 11 (D.D.C. 2005); *Kriesch v. Johanns,* 468 F. Supp. 2d 183, 187-88 (D.D.C. 2007) (holding that, under the totality of the circumstances, the facts provided sufficient support to defeat a motion to dismiss despite being broad allegations).

Mr. Gibson's hostile work environment allegations includes his subordinates' racist comment, that Mr. Kim treated Black employees differently than white employees, and that on multiple occasions, Mr. Gibson's subordinates disrespected his authority, disregarded his instructions, and that his team members, including his supervisor, made disparaging comments, including about his race. FAC ¶¶ 23, 29, 32, 35, 51. Defendant's failure to take any action to stop this harassing behavior, including Mr. Kim and other high-level executive employees' directives to Mr. Gibson to "stop talking about the past," and "stop looking in the rearview mirror," only emboldened his harassers. *See Copeland v. Arklay, LLC*, 273 F. Supp. 3d 69, 76 (D.D.C. 2017) (in

the Title VII context, "[i]f the harassing employee is the victim's co-worker, as opposed to [his] supervisor, 'the employer is liable only if it was negligent in controlling working conditions.'") (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)). Mr. Kim also called Mr. Gibson "stupid," placed him on a PIP, reprimanded only the Black team members for the mistake of a white employee, changed Mr. Gibson's schedule without justification, and terminated his employment. FAC ¶¶ 32, 40, 52-60, 64; *Baird*, 662 F. 3d at 1252 (Plaintiff can plead "discrete acts" as part of the hostile work environment claim that are adequately linked).

Further, Mr. Gibson adequately alleged that Defendant knew of the hostile work environment and harassing behavior yet failed to act in response. FAC ¶¶ 23-27, 29-34, 36-39, 43-50, 51, 61-63. Mr. Kim himself contributed to the hostile work environment. FAC ¶¶ 25, 32, 40, 44, 64. And, even though Mr. Kim spoke to Mr. Gibson's subordinates about their behavior, he failed to address a critical issue—the racist comment made by Mr. Wasowicz. FAC ¶¶ 26-27. Following the conversation with Mr. Kim, Mr. Gibson's subordinates continued to act in a hostile and disrespectful manner toward Plaintiff, demonstrating that Mr. Kim's discussion was baseless and inconsequential. FAC ¶¶ 29, 51. *See Copeland*, 273 F. Supp. 3d at 76.

Defendant also argues that Mr. Gibson's hostile work environment claim based on his race and color must fail because Mr. Gibson did not identify specific comparable employees who received favorable treatment. *See* ECF No. 18-1 Def. Mot. to Dismiss 7-8. Defendant cites *Joyner v. Morrison & Foerster LLP*, for the proposition that at the pleading stage, Mr. Gibson <u>must</u> plausibly allege that similarly situated coworkers were treated favorably. *See* ECF No. 18-1 Def. Mot. to Dismiss 7-8 (emphasis added); 2023 WL 6313194, at *5 (D.D.C. Sept. 27, 2023). But this is a misreading of the case. The Court in *Joyner* states the following:

> <u>One</u> way a plaintiff might cross the threshold from speculation into plausibility is to allege he 'was treated differently from similarly situated employees who are not part of the

protected class.'… But to do so, '[a] plaintiff must ... demonstrate that all of the relevant aspects of [his] employment situation were nearly identical to those of the [comparator].'"

*Id*. at *5 (emphasis added) (quoting *Redman v. YMCA of Metro. Wash.*, 417. F. Supp. 3d 99, 102 (D.D.C. 2019)) (other citations and quotation omitted)). The court is very clear that a plaintiff must allege adequate comparator evidence ***only if*** he chooses to use similarly situated employees who are not part of the protected class in order to "cross the threshold from speculation [of discrimination] into plausibility" is to allege he "was treated differently from similarly situated employees who are not part of the protected class." *Id.*

Mr. Gibson identified a comparator employee, Mr. Lima, who Mr. Kim treated favorably on at least one occasion, including when he failed to reprimand Mr. Lima for his mistake, yet reprimanded Mr. Gibson and required that he take additional training for Mr. Lima's mistake. FAC ¶¶ 56-57. However, he does not intend to rely solely on this comparator evidence. *See Saunders v. Mills*, 172 F. Supp. 3d 74, 87 (D.D.C. 2016) ("The purpose of [the similarly situated] requirement 'is to provide plaintiffs the 'boost' that the *McDonnell Douglas* framework intended.'") (quoting *Coleman v. Donahoe*, 667 F. Supp. 3d 835, 852 (7th Cir. 2012) (citations omitted).

## B.  Mr. Gibson Adequately Pled a Hostile Work Environment Under Section 1981 (Count 5).

Section 1981 prohibits employers from intentionally discriminating on the basis of race with respect to the "benefits, privileges, terms, and conditions," of employment. 42 U.S.C. § 1981. "In Section 1981 and Title VII cases, courts use the same framework for determining whether unlawful discrimination occurred." *Atissi-Etoh v. Fannie Mae*, 712 F. 3d 572, 576 (D.C. Cir. 2013).

Because the standards for hostile work environment under Title VII and Section 1981 are substantially the same, Mr. Gibson has adequately alleged a hostile work environment under Section 1981 for the same reasons it is adequate under Title VII. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993); *Uzoukwu v. Metro. Washington Council of Gov'ts*, 27 F. Supp. 3d 62, 69-70

(D.D.C. 2014) (denying motion to dismiss a hostile work environment claim under Section 1981 when plaintiff alleged Defendants denied her work opportunities, subjected her to "events and incidents that disrupted her ability to work," accused her of inappropriate work conduct, isolated and ostracized her, her coworkers bullied and intimidated her, and Defendant terminated her employment). *See supra*, Sections I and III(A).

**C.  Mr. Gibson Adequately Pled a Hostile Work Environment Under the DCHRA (Count 8).**

The elements of a hostile work environment claim under the DCHRA have historically mirrored the federal Title VII requirements, and thus under that standard Mr. Gibson has adequately alleged a hostile work environment under Section 1981 for the same reasons it is adequate under Title VII. *Lively v. Flexible Packaging Assoc.*, 830 A. 2d 874, 889 (D.C. Cir. 2003); *Daka Inc. v Breiner*, 711 A. 2d 86, 94 (D.C. Cir. 1998) ("[T]his court, in deciding issues arising under the DCHRA, consistently relies upon decision of the federal courts in Title VII cases as particularly persuasive authority."); *Burrell v. Shepard*, 321 F. Supp. 3d 1, 9 (D.D.C. 2018) ("[T]he legal standards for establishing [hostile work environment] claims under Title VII and the DCHRA are substantively the same.").

In October 2022, the DCHRA was expanded to direct the Court to look at the "totality of the circumstances," when evaluating a hostile work environment claim. "No specific number of incidents and no specific level of egregiousness need to be proved … the trier of fact should consider … the amount and nature of the conduct, the plaintiff's response to such conduct, and the relationship between the harassing party and the plaintiff." *Daka, Inc.*, 711 A.2d at 93 (internal citations omitted); *Johnson v. Shinseki*, 811 F. Supp. 2d 336, 345 (D.D.C. 2011) ("The totality of the circumstances must be examined in making this determination.") (citation omitted).

Under the DCHRA amendment standard, and as explained in Sections I, III(A) and (B), *supra*, Mr. Gibson has sufficiently alleged a hostile work environment claim beginning with the July 2022 comment and continuing through his termination from employment in April 2023. Mr. Gibsons' allegations are within a nine-month period, involve the same group of actors, and demonstrates a pattern of escalation, culminating with his termination from employment. FAC ¶¶ 24, 30-33, 36, 41, 46, 48-52, 59; *see also Wise*, 842 F. Supp. at 126 (a plaintiff may state a hostile work environment claim by alleging repeated incidents of less severe harassment or discrimination, such as the use of a "racial slur" along with "myriad incidents ranging from threats of discipline based on false accusations to being singled out and excluded from trainings and award ceremonies and denied promotions."). !

Mr. Gibson adequately alleged a hostile work environment based on race under Title VII, Section 1981, and DCHRA, as his Complaint meets the lower pleading standard required at this stage of litigation. Further, Mr. Gibson identified several detailed allegations, including but not limited to a direct racist comment made at him, continuous undermining of his authority by his subordinates, his supervisor's inaction on his concerns and his supervisor's own harassing comments and actions, including placing him on a PIP and terminating his employment.

## IV.    Mr. Gibson Adequately Pled a Hostile Work Environment Based on Family Responsibilities under the DCHRA (Count 12).

To state a claim for family responsibilities discrimination under the DCHRA, Mr. Gibson must allege that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination based on his family responsibilities. *McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 3 (D.C. Cir. 2010).

Mr. Gibson has adequately alleged all elements—he has a daughter who he is primarily responsible for taking to and from her after school activities; Mr. Kim ordered Mr. Gibson work on a later shift such that he could not drive his daughter to and from her after school activities; and Mr. Kim knew of Mr. Gibson's responsibilities and provided no legitimate reason as to why Mr. Gibson had to work the later shift such that he can infer Mr. Kim's discriminatory motive. FAC ¶¶ 17, 58-60.

As is alleged in the Complaint, Mr. Kim directed Mr. Gibson to change his schedule without a legitimate reason, knowing full well that it would have a devastating impact on Mr. Gibson's family responsibilities. Such action raises an inference that Mr. Kim held unlawful discriminatory animus against him. The Defendant relies in part on *Abebio v. G42 Gov't Solutions, Inc.*, where the plaintiff failed to sufficiently allege family responsibilities discrimination when she alleged that she missed one day of work to attend to her family responsibilities and was fired three weeks later with no intervening events regarding her family responsibilities. 72 F. Supp. 3d 254, 259 (D.D.C. 2014). However, unlike in *Abebio,* Mr. Gibson's changed schedule prevented him from ever picking up his daughter and thus, completely interfering with his caregiving duties. FAC ¶ 60. The fact that Mr. Gibson was targeted *through* his familial obligations raises an inference of discriminatory animus sufficient to survive Defendant's motion to dismiss.

Defendant also argues that Mr. Gibson fails to allege a sufficient adverse action. To the extent the Court agrees with this position, the Supreme Court is set to clarify this very issue in the *Muldrow v. City of St. Louis, Mo.*, No. 22-193. The Court will clarify whether discrimination is only actionable when it constitutes a "tangible change in working conditions that produces a material employment disadvantage." *Id.*, Pet. App. at 9a (citing *Clegg v. Ark. Dep't of Corr.*, 496 F. 3d 922, 926 (8th Cir. 2007). The Court's ruling on this issue is therefore directly applicable to

whether the change in Mr. Gibson's schedule constitutes an unlawful employment action. As such, Mr. Gibson respectfully requests that if the Court is inclined to dismiss this claim, to instead reserve judgment on this claim until the decision in *Muldrow v. City of St. Louis, Mo.*, No. 22-193.

## **CONCLUSION**

Mr. Gibson's Amended Complaint meets at least the minimal pleading standards of this Court. Therefore, the Court should deny Defendant's Partial Motion to Dismiss in its entirety.

Date: February 8, 2024                    Respectfully submitted,

                                          Alan Lescht & Associates, P.C.

                                          /s/ Katherine Lease
                                          Katherine Lease (#1722844)
                                          Tamara Slater (#1616337)
                                          1825 K Street NW, Suite 750
                                          Washington, DC 20006
                                          Tel: (202) 463-6036
                                          Fax: (202) 463-6067
                                          Katherine.Lease@leschtlaw.com
                                          Tamara.Slater@leschtlaw.com

                                          *Counsel for Plaintiff*