**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **TYRONE GIBSON**<br><br>Plaintiff,<br><br>v.<br><br>**KIRKLAND & ELLIS, LLP**<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:23-cv-03371-TSC |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT KIRKLAND & ELLIS LLP'S LIMITED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

ORRICK, HERRINGTON & SUTCLIFFE LLP

Francesca S. Morency (D.C. Bar No. 1617902)
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005-1706
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
fmorency@orrick.com

Lynne Hermle (*pro hac vice*)
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
lchermle@orrick.com

*Counsel for Kirkland & Ellis LLP*

Dated: February 15, 2024

**INTRODUCTION**

Rather than accept that he was terminated—not because he is Black or had to pick up his daughter from school—but instead because he inappropriately accessed proprietary firm data and forwarded it to his personal email address, Plaintiff tries to create a narrative where he was harassed because of his race and in retaliation for complaints he supposedly made and that he was discriminated against because of his family responsibilities. His amended complaint confirms otherwise.

First, other than the single isolated comment (that a subordinate allegedly made), Plaintiff cannot point to a time when he was treated unfairly because he is Black. One comment, by a subordinate no less, is not severe or pervasive enough to state a claim for hostile work environment.

Second, Plaintiff's opposition cannot save his retaliatory hostile work environment claim because his complaints about unfair treatment are not protected activity. The only incident that Plaintiff alleges is tied to his race is his July 2022 complaint to his supervisor, Mr. Kim, regarding his subordinate's alleged race-based comment. However, Plaintiff fails to allege a causal connection between that July 2022 complaint and all but one of his allegations of harassment. A single allegation of *de minimis* conduct for which a causal connection is alleged is not severe or pervasive.

Plaintiff's Title VII claim for retaliatory hostile work environment also fails because he failed to include it in his EEOC charge and there is nothing in the charge that would make the EEOC aware that he is bringing a retaliatory harassment claim. The charge does not mention a "retaliatory hostile work environment," the majority of the allegations that allegedly support his retaliatory hostile work environment claim do not appear in the charge, and three of the alleged six harassers are not even mentioned in the charge.

Finally, Plaintiff's claim for family responsibilities discrimination fails because Plaintiff

does not allege in his amended complaint that Plaintiff's family responsibilities were a motivating factor in the decision to change his schedule. Nor does he cite a single case holding that a schedule change is sufficient to establish an adverse action.

## ARGUMENT

### I. Plaintiff Fails to State a Claim for a Hostile Work Environment Based on Race and Color Under Title VII, Section 1981, and the DCHRA

#### *A. Title VII and Section 1981 (Counts 2 and 5)*

Plaintiff fails to demonstrate a hostile work environment based on race and color claim because he does not to sufficiently allege: (1) that the alleged harassment was the result of his race or color; and (2) the harassment was severe or pervasive enough to alter the terms, conditions, or privileges of his employment.

##### *a. Plaintiff Fails To Sufficiently Allege the Alleged Harassment Was the Result of His Race or Color*

In support of his claim for hostile work environment based on race, Plaintiff alleges that his subordinates disrespected his authority, disregarded his instructions, and that his supervisor, Mr. Kim, called him "stupid", placed him on a PIP, changed his schedule without justification, and terminated his employment. *See* Opp. 16-17.[1] Plaintiff does not, however, allege that this conduct occurred because he is Black. In fact, nearly all of this alleged conduct was allegedly committed by people other than Mr. Waskowicz, the subordinate who allegedly made the sole

[1] Plaintiff's attempt to expand his hostile work environment claims based on race and retaliation to include the discrete acts of his scheduling change, performance improvement plan, and termination is inappropriate because those acts are inadequately linked to his other allegations of harassment. *See Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*, 2023 WL 6199078, at *12 (D.D.C. Sept. 22, 2023) (noting that "this jurisdiction frowns on plaintiffs who attempt to bootstrap their alleged discrete acts of…discrimination…into a broader hostile work environment claim" and holding that such acts must be connected to other acts of harassment). The bulk of the alleged harassing conduct occurred months before these discrete acts and the conduct is varied in type and was committed by several actors other than Mr. Kim, the individual alleged responsible for the discrete acts.

racial comment here. Because Plaintiff fails to tie these allegations to his race, they cannot support a race-based hostile work environment claim. *Lewis v. District of Columbia*, 653 F. Supp. 2d 64, 80 (D.D.C. 2009) ("It is…important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination.").[2]

Plaintiff also argues that Kirkland "fail[ed] to take any action to stop…harassing behavior.'" Opp. at 16. But Plaintiff acknowledges that Kirkland responded to Plaintiff's complaint about Mr. Waskowicz—Mr. Kim had two meetings with Plaintiff and his subordinate employees to address Mr. Waskowicz's behavior. *See* FAC ¶ 26. Even if Kirkland had not done so, Plaintiff does not allege that its supposed "failure to take any action to stop…harassing behavior" was motivated by race. As a result, it cannot support a hostile work environment claim. The only case Plaintiff cites in support of his argument, *Copeland v. Arklay, LLC*, 273 F. Supp. 3d 69, 76 (D.D.C. 2017), is distinguishable because the case addressed whether the defendant could be held vicariously liable for co-worker harassment, not whether the failure to adequately act on a complaint is sufficient to constitute a hostile work environment.

Finally, Plaintiff's allegations that Mr. Kim verbally reprimanded Plaintiff and other Black employees and ordered them to undergo additional training (FAC ¶¶ 54, 57) cannot support his hostile work environment claim because Plaintiff fails to allege that non-Black employees were "similarly situated" to him. *See Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514

[2] *See also Harris v. Wackenhut Servs., Inc.*, 419 F. App'x 1, 2 (D.C. Cir. 2011) (evidence offered by a plaintiff that "bears no connection" to his protected class, "cannot support a hostile work environment claim."); *Husain v. Barsa*, 2021 WL 663206, at *13 (D.D.C. Feb. 19, 2021) ("It is not enough for [the] plaintiff to show that [the defendant] was 'harsh, unjust, and rude[;]' rather, the plaintiff must offer some evidence that the hostility was the product of discriminatory animus.").

(D.C. Cir. 1995); *Joyner v. Morrison & Foerster LLP*, 2023 WL 6313194, at *5 (D.D.C. Sept. 27, 2023). Plaintiff argues that he is excused from alleging such facts, because he "does not intend to rely solely on this comparator evidence." Opp. at 18. But the other allegations he relies upon in support of his claims are, as described above and below, insufficient to support a claim because they are either unrelated to race or are not severe or pervasive.

***b. Plaintiff Fails to Allege the Harassment Was Sufficiently Severe or Pervasive***

Excluding these allegations that have nothing to do with race, Plaintiff is left with a single isolated comment that his subordinate allegedly made to support his race-based hostile work environment claim: "In or around July 2022, Mr. Waskowicz told Mr. Gibson he would not work under his authority 'because [he] is Black.'" FAC ¶ 23. A single isolated comment such as this is not severe or pervasive enough to state a hostile work environment claim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("isolated incidents (unless extremely serious) will not amount to" a hostile work environment); *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) ("a few isolated incidents of offensive conduct [will] not amount to actionable harassment"); *Harris*, 419 F. App'x at 1-2 ("three racially motivated comments directed at [the plaintiff] ... do not amount to actionable harassment").

Plaintiff's cases are distinguishable because they all involve extreme or continuous incidents of discrimination, such as ongoing physical or verbal threats, and routine patterns of disparate treatment or exclusion from work opportunities—none of which Plaintiff alleges here. In *Wise v. Ferriero*, 842 F. Supp. 2d 120 (D.D.C. 2012), a hostile work environment claim survived a motion to dismiss "if not by much," by alleging threats of discipline based on false accusations of misconduct, exclusion from trainings, denial of promotions, and, critically, a supervisor's use of a racist epithet—the n-word—so "uniquely offensive" and severe "that the D.C. Circuit has suggested" its use "can create a hostile work environment by itself." *Moore v. U.S. Dep't of State*,

351 F. Supp. 3d 76, 93 (D.D.C. 2019); *see also Jones v. Granholm*, 2021 WL 2530677, at *14 (D.D.C. June 21, 2021) (discussing a retaliatory hostile work environment claim rather than a race-based hostile work environment and thus, the absence of any race-based conduct was not dispositive); *Behrens v. Tillerson*, 264 F. Supp. 3d 273, 280 (D.D.C. 2017) (same); *Powell v. Castaneda*, 390 F. Supp. 2d 1, 11 (D.D.C. 2005) (hostile work environment included "physical and verbal threats" not present here); *Kriesch v. Johanns*, 468 F. Supp. 2d 183, 187-88 (D.D.C. 2007) (decided prior to the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), making clear that plaintiffs must plead sufficient facts to establish a "plausible" cause of action); *Uzoukwu v. Metro. Wash. Council of Gov'ts*, 27 F. Supp. 3d 62, 69-70 (D.D.C. 2014) (plaintiff's hostile work environment included allegations of harassment "based on her ethnicity," including accusing her of inappropriate work conduct, isolating and ostracizing her, alleging she was homeless, and alleging that she was an undocumented immigrant, none of which are alleged here).

***B. DCHRA (Count 8)***

Plaintiff's hostile work environment based on race and color claim under the DCHRA also fails. Plaintiff argues that his allegations are sufficient because they "are within a nine-month period, involve the same group of actors, and demonstrate[] a pattern of escalation, culminating with his termination from employment." Opp. at 20. But importantly none of the allegations—except for the single comment by Mr. Waskowicz —are tied to his race. Non-race related allegations cannot support a hostile work environment claim under the DCHRA. D.C. Code Ann. §§ 2-1402.11(a), (c-2) (harassment must be "based on one or more protected characteristics"); *Lewis*, 653 F. Supp. 2d at 80. Moreover, no "pattern of escalation" is alleged here. The only alleged race-based comment was made in July 2022. From July 2022 until his termination in April 2023, the conduct Plaintiff alleges he was subject to common "work-related" actions and an insult

unrelated to his race. *Faragher*, 524 U.S. at 788 (explaining that "ordinary tribulations of the workplace, such as the sporadic use of abusive language" does not constitute a hostile work environment); *Munro v. LaHood*, 839 F. Supp. 2d 354, 366 (D.D.C. 2012) ("work-related actions by supervisors," are not "typically…sufficient for a hostile work environment claim").

## II. Plaintiff Fails to State a Claim for Retaliatory Hostile Work Environment Under Title VII and the DCHRA Counts 12 [sic] and 13 [sic]

Plaintiff's retaliatory hostile work environment claim also fails because he does not sufficiently allege: (1) that he engaged in protected activity; (2) a causal connection between his alleged protected activity and the alleged adverse employment action here—the retaliatory hostile work environment; and (3) facts sufficient to constitute a retaliatory hostile work environment. *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) (Title VII); *Howard Univ. v. Green*, 652 A.2d 41, 45 (D.C. 1994) (DCHRA).

### *A. Plaintiff's Allegations of Protected Activity Are Insufficient*

Plaintiff claims that he engaged in protected activity from November 2022-April 2023 by "complaining about his subordinates' disrespect, his supervisor's derogatory comments, and continued disregard for his repeated complaints." Opp. at 9 (citing FAC ¶¶ 30, 33, 36, 43, 45, 61). But Plaintiff never alleges that these complaints were complaints of racial discrimination—a pre-requisite to state a claim for retaliatory hostile work environment. *Powell v. Am. Red Cross*, 518 F. Supp. 2d 24, 36 (D.D.C. 2007) (plaintiff could not establish retaliation claim because she did not complain to her employer about racial discrimination); *Watson v. D.C. Water & Sewer Auth.*, 2018 WL 6000201, at *15-16 (D.D.C. Nov. 15, 2018) ("[G]eneralized complaints of unfair treatment and harassment" are insufficient."), *aff'd*, 777 F. App'x 529 (D.C. Cir. 2019).[3]

[3] Assuming for purposes of this Motion only that Plaintiff's April 1, 2023 complaint (FAC ¶ 61) regarding family responsibilities discrimination could be considered protected activity, it cannot

The only complaint that is possibly protected activity is Plaintiff's report to Mr. Kim in July 2022 that Mr. Waskowicz allegedly told him he would not work under his authority "because he is Black." Opp. at 8 (citing FAC ¶¶ 23-24). Assuming for purposes of this motion only that this complaint qualifies as protected activity, this cannot support a retaliatory hostile work environment claim because: (1) Plaintiff fails to sufficiently allege a causal connection between the alleged harassing conduct and the July 2022 complaint; and (2) the alleged harassing conduct is not sufficiently severe or pervasive.

***B. Plaintiff Fails to Allege the Requisite Causal Connection***

No causal connection exists between Plaintiff's complaint to Mr. Kim and all but one instance of alleged harassing conduct. Plaintiff's complaint to Mr. Kim was in July 2022—four or more months before his subordinates allegedly disrespected his authority and disregarded his instructions, Mr. Kim's "stupid" comment, Mr. Kim's and others' comments to "stop looking in the rearview mirror," Mr. Kim reprimanded Plaintiff and mandated additional trainings, the PIP, schedule change, and termination. *Gonzalez v. Garland*, 2023 WL 6160013, at *8 (D.D.C. Sept. 21, 2023) (Chutkan, J.) (citing cases making clear that a four-month time gap is insufficient to establish causation); *Greer v. Bd. of Trustees of Univ. of D.C.*, 113 F. Supp. 3d 297, 311 (D.D.C. 2015) (Chutkan, J.) ("When relying on temporal proximity alone to demonstrate causation, there is no bright-line rule, although three months is perceived as approaching the outer limit.").

In his opposition, Plaintiff tries to establish a causal connection by suggesting that in March 2023, "Mr. Kim told Mr. Gibson to 'stop talking about the past,' one week after he complained

---

serve as the basis of a retaliatory hostile work environment claim because all of the alleged retaliatory harassment, except for Plaintiff's termination, predated the April 1 complaint and a single discrete act of termination does not constitute a hostile work environment. *See Hayslett v. Perry*, 332 F. Supp. 2d 93, 98 (D.D.C. 2004); *Bolden v. Off. of the Architect of the Capitol*, 2005 WL 607875, at *9 (D.D.C. Mar. 15, 2005).

about his subordinates' continued disrespectful behavior, including Mr. Waskowicz's racist comment." Opp. at 12 (citing FAC ¶¶ 24-25, 44). But Plaintiff did not complain about Mr. Waskowicz's alleged racist comment in March 2023. FAC ¶ 43. He only complained about Mr. Waskowicz's comment in July 2022—eight months before Mr. Kim's March 2023 comment, which is insufficient to establish a causal connection. FAC ¶¶ 23-24.

### *C. Plaintiff Fails to Allege Facts that State a Claim for Retaliatory Hostile Work Environment*

Plaintiff is left with a single allegation for which he has alleged a causal connection: "[In or around July 2022,] [w]hen Mr. Gibson reported [Mr. Waskowicz's allegedly "racist" comment] to his supervisor Mr. Kim (Asian), Mr. Kim questioned whether Mr. Waskowicz made the comment and failed to address it with Mr. Waskowicz." Opp. at 7 (citing FAC ¶¶ 24-27). This single allegation is insufficient to support a claim for two reasons.

First, contrary to Plaintiff's contentions, Kirkland, addressed the comment with Mr. Waskowicz (*see* FAC ¶ 26) and presumably did so effectively—there were no similar incidents following Mr. Kim's meeting with Plaintiff and his subordinates. Second, even assuming Plaintiff's allegation is true, failure to adequately address a single incident and an employer's questioning of an employee does not rise to the level of severe or pervasive conduct. *Faragher*, 524 U.S. at 788 ("isolated incidents (unless extremely serious) will not amount to" a hostile work environment); *Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011) (employer's failure to remedy the various critiques and epithets to which plaintiff's fellow employees subjected her insufficient to constitute retaliation); *Melland v. Napolitano*, 2012 WL 1657067, at *15 (W.D. Wis. May 10, 2012) (alleged acts of harassment, including "questioning of plaintiff regarding her EEOC complaints" were insufficiently severe or pervasive to establish a hostile work environment claim).

Plaintiff cites *Powell v. Lockhart*, 629 F. Supp. 2d 23, 49 (D.D.C. 2009) but there the alleged harassing conduct occurred when plaintiff was an ongoing "active participant in EEO activity" and the hostile actions which allegedly occurred (i.e. slamming office furniture and warning her against bringing grievances to others within the agency) were taken in response to this activity. Here, all but one instance of alleged harassing activity took place several months after Plaintiff made his July 2022 complaint.

Plaintiff's other cases are also distinguishable. *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1090 (10th Cir. 2007) (holding a "combination of threats and actions taken with the design of imposing both economic and psychological harm" sufficient to establish claim—no such "threats" or actions alleged here); *Porter v. Shah*, 606 F.3d 809, 818 (D.C. Cir. 2010) (discussing a discrete retaliation claim rather than a retaliatory hostile work environment claim); *Mogenhan v. Napolitano*, 613 F.3d 1162, 1166-67 (D.C. Cir. 2010) (same); *Mitchell v. District of Columbia*, 304 F. Supp. 3d 110, 117-18 (D.D.C. 2018) (same); *Test v. Holder*, 614 F. Supp. 2d 73, 83-84 (D.D.C. 2009) (prior to harassing conduct, supervisor told plaintiff that his EEO activity was "killing" him, indicating that he was upset with plaintiff's activity and suggesting a retaliatory intent—nothing of the sort is alleged here).

## III. <u>Plaintiff's Title VII Retaliatory Hostile Work Environment Claim Should Be Dismissed Because Plaintiff Failed to Exhaust Administrative Remedies (Count 12 [sic])</u>

Plaintiff does not dispute that he failed to specifically raise a claim for retaliatory hostile work environment in his charge. Instead, he argues that he exhausted his claim because he "included a retaliation claim and a [race-based] hostile work environment claim with substantially overlapping factual bases in his administrative complaint." Opp. at 14. Plaintiff asserts: "[t]his Court has held that plaintiffs have exhausted their administrative remedies as to claims not specifically made in a charge where it was clear that the administrative body would be aware of

those claims during the investigation of the charge." Opp. at 13 (citing cases). Here, there is no basis to assume that the EEOC would be aware of Plaintiff's retaliatory hostile work environment claim. The phrase "Retaliatory hostile work environment" does not appear in the charge. The majority of allegations that constitute his retaliatory hostile work environment claim, including allegations allegedly central to Plaintiff's retaliatory harassment claim that he was instructed to "stop talking about the past" and "stop looking in the rearview mirror," are not mentioned in the charge, *see* Exhibit A to Motion, and three of the six alleged perpetrators of the retaliatory hostile work environment (Ms. Curto, Mr. Merriman, and Mr. Freund) are not even mentioned in the Charge.

Moreover, the allegations that purportedly overlap with his retaliation and race-based hostile work environment claims, on their face, do not suggest to the EEOC or Kirkland that Plaintiff was asserting a retaliatory hostile work environment claim. Perhaps tellingly, Plaintiff did not include a retaliatory hostile work environment in his original complaint (only in his amended complaint) suggesting that Plaintiff did not intend to, and did not, in fact, raise a claim for retaliatory hostile work environment in the charge. Because Plaintiff's retaliatory hostile work environment claims are not sufficiently "like or reasonably related to" his discrete retaliation and race-based hostile work environment claims, the Court should dismiss Plaintiff's Title VII retaliatory hostile work environment claim for failure to exhaust. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995).

Plaintiff's cases are easily distinguishable. In *Test*, 614 F. Supp. 2d at 83, a summary judgment case, the Court held that plaintiff met the exhaustion requirement because the EEOC was made aware of those claims during its investigation, including in interviews: "For example, in Test's EEO interview, he complained of the same verbal abuse that he now alleges was retaliatory

and contributed to a hostile work environment." No such record exists here. In *Lane v. Tschetter*, 2007 WL 2007493, at *5 (D.D.C. July 10, 2007), the court held that plaintiff's retaliatory indefinite suspension claim was exhausted because the claim would be reasonably expected to surface during an investigation of her EEO charge regarding her termination considering that plaintiff's employer was required to place employees on indefinite suspension before terminating them. Here, no facts exist to suggest that Plaintiff's retaliatory hostile work environment allegations would surface in an investigation regarding plaintiff's discrete retaliation and race-based hostile work environment allegations. Finally, in *Perry v. Clinton*, 674 F. Supp. 2d 110, 118 (D.D.C. 2009), the court held that plaintiff's disparate pay claim was exhausted because she raised the issue of pay discrimination in her charge and the record of the EEOC's investigation revealed a focus on such claims. Similar facts do not exist here.

## IV. Plaintiff Fails to State a Claim for Discrimination Based on Family Responsibilities (Count 12)

Plaintiff's unlawful discrimination claim based on family responsibilities under the DCHRA should also be dismissed because schedule changes alone do not constitute adverse employment actions, and Plaintiff did not allege that his family schedule was a motivating factor in the decision to adjust his work schedule.

### *A. Schedule Changes Alone Are Not Adverse Employment Actions*

Plaintiff fails to cite a single case rebutting the cases Kirkland cited, which hold that schedule changes, without more, do not constitute an "adverse employment action." Motion at 13-14 (citing *Mohmand v. Broad. Bd. of Governors*, 2018 WL 4705800, at *5 (D.D.C. Sept. 30, 2018); *Burke v. Inter-Con Sec. Sys., Inc.*, 926 F. Supp. 2d 352, 358 (D.D.C. 2013)). Instead, Plaintiff argues the Court should reserve judgment on this issue until the Supreme Court decides *Muldrow v. City of St. Louis, Mo.*, No. 22-193. *Muldrow*, however, is a case involving a transfer decision

rather than a scheduling change. 143 S. Ct. 2686 (2023) (granting *certiorari* on the following question: "Does Title VII prohibit discrimination in transfer decisions absent a separate court determination that the transfer decision caused a significant disadvantage?"). Thus, it is unlikely to alter the current law, which confirms that schedule changes alone are not adverse employment actions.

### ***B. Plaintiff Does Not Allege That Family Responsibilities Motivated His Schedule Change***

Plaintiff fails to allege that family responsibilities were a motivating factor in the decision to change his schedule. *See Abebio v. G4S Gov't Sols., Inc.*, 72 F. Supp. 3d 254, 259 (D.D.C. 2014); *Lewis v. Exelon Corp.*, 2022 WL 1556329, at *2 (D.D.C. May 17, 2022) (dismissing DCHRA claim and noting plaintiff failed to allege that defendant criticized him for taking medical leave or ever received negative comments about his disability). Instead, Plaintiff argues "Mr. Kim directed Mr. Gibson to change his schedule without a legitimate reason, knowing full well that it would have a devastating impact on Mr. Gibson's family responsibilities" and that "[s]uch action raises an inference that Mr. Kim held unlawful discriminatory animus against him." Opp. at 21. But, Mr. Kim's alleged knowledge of the effect of the schedule change on Plaintiff's family responsibilities says nothing about whether he made the change "***because*** of [those] family responsibilities." *Abebio*, 72 F. Supp. 3d at 257.

Plaintiff fails to cite a single case to support his contention that knowledge of the effect of a scheduling change on Plaintiff's family responsibilities is sufficient to establish an inference of discrimination. He cannot because it is not the law. If it was, an employee could state a claim for family responsibilities discrimination every time an employer made a decision that negatively affected an employee's family responsibilities. *See Wallace v. Skadden, Arps, Slate, Meagher & Flom LLP*, 799 A.2d 381, 386 (D.C. 2002) (quoting *Simpson v. D.C. Off. of Hum. Rts.*, 597 A.2d

392, 405 (D.C. 1991) (The DCHRA "contains no explicit requirement that an employer accommodate an employee's working schedule so that the employee can discharge his or her 'family responsibilities.'")).

## CONCLUSION

For the reasons discussed above and in the Motion, this Court should grant Kirkland's Limited Motion to Dismiss and dismiss Count 2 (Title VII Race and Color Discrimination – Hostile Work Environment), Count 5 (Section 1981 Race and Color Discrimination – Hostile Work Environment), Count 8 (DCHRA Race and Color Discrimination – Hostile Work Environment), Count 12 (DCHRA Family Responsibilities Discrimination – Hostile Work Environment), Count 12 [sic] (Title VII Retaliation for Protected Activity – Hostile Work Environment), and Count 13 [sic] (DCHRA Retaliation for Protected Activity – Hostile Work Environment) with prejudice.

Dated: February 15, 2024

Respectfully submitted,

*/s/Francesca S. Morency*

Francesca S. Morency (D.C. Bar No. 1617902)
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005-1706
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
fmorency@orrick.com

Lynne Hermle (*pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
lchermle@orrick.com

*Counsel for Kirkland & Ellis LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 15, 2024, a copy of the foregoing REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LIMITED MOTION DISMISS PLAINTIFF'S AMENDED COMPLAINT was served on all parties of record.

*/s/ Francesca S. Morency*
Francesca S. Morency (D.C. Bar No. 1617902)