UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TYRONE GIBSON**, <br><br> Plaintiff, <br><br> v. <br><br> **KIRKLAND & ELLIS, LLP**, <br><br> Defendant. | Civil Action No. 23-cv-3371 |

## MEMORANDUM OPINION

Defendant Kirkland & Ellis, LLP, a global law firm, promoted Plaintiff Tyrone Gibson three times within its technology department. But Plaintiff alleges that after his third promotion, he experienced multiple instances of discrimination from both his subordinates and supervisor. He repeatedly conveyed his concerns to his supervisor and Human Resources but was put on a Performance Improvement Plan and ultimately fired.

Plaintiff brings fourteen counts of discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the D.C. Human Rights Act. Defendant moved to dismiss six counts of Plaintiff's Amended Complaint. Def.'s Mot. to Dismiss at 1–18, ECF No. 18-1 ("Def.'s Mot."). The court will GRANT Defendant's Motion as to Plaintiff's hostile work environment claims alleged in Counts II, V, VIII, and his retaliatory hostile work environment claims in Counts XIII and XIV, because Plaintiff fails to state a claim. The court will DENY Defendant's Motion to Dismiss on Count XII, however, because Plaintiff plausibly alleges discrimination based on family responsibilities.

I.   **BACKGROUND**

A.   **Factual Background**

Defendant hired Plaintiff, who is a Black man, in December 2018, as a Technology Analyst, Level I. Am. Compl. ¶ 11, ECF No. 16 ("Am. Compl."). In January 2020, Plaintiff was promoted to Level II, *id.* ¶¶ 12–14, and in the following two years, Defendant twice recognized him for outstanding performance. *Id.* In July 2022, Defendant again promoted Plaintiff to Technology Support Supervisor, managing ten subordinates. *Id.* ¶ 15. When he began this role, Plaintiff started working earlier hours, 7:30 A.M. to 4:00 PM, because he was responsible for picking up his daughter and taking her to after-school activities every weekday except Thursday. *Id.* ¶ 17.

i.   **Work Disputes**

Within Plaintiff's first month as a supervisor, one of his subordinates, Sam Waskowicz, a White male, told him that he would not work under Plaintiff's authority "because [he] is Black." *Id.* ¶ 23. Plaintiff immediately reported this comment to his direct supervisor, Associate Director Kenneth Kim. *Id.* ¶ 24. Kim held two meetings with Plaintiff and his subordinates to address Waskowicz's behavior. *Id.* ¶ 26.

In November 2022, another subordinate employee, Michel[sic] Lima, also questioned Plaintiff's authority. *Id.* ¶ 29; Def.'s Ex. A at 3, ECF No. 18-2. Plaintiff complained about Lima's behavior to Kim. *Id.* ¶ 30. In response, Kim downplayed Plaintiff's allegations, "suggesting that he believed [Plaintiff] was in the wrong." *Id.* ¶ 31.

In another meeting sometime between December 2022 and January 2023, Kim called Plaintiff "stupid." *Id.* ¶ 32. Plaintiff does not allege a reason for this incident, but, after he

complained about Kim's comment to Anna Freeman, the Human Resources coordinator, Kim read a prepared apology to Plaintiff. *Id.* ¶ 33–34.

In February 2023, Lima disregarded Plaintiff's directions to perform inventory management and other work in line with his job duties. *Id.* ¶ 35. Plaintiff complained in writing to Freeman. *Id.* ¶ 36. Defendant took no action. *Id.* ¶ 39.

### ii.    Performance Improvement Plan

Months later, on March 1, 2023, Kim placed Plaintiff on a Performance Improvement Plan ("PIP"). *Id.* ¶ 40. Plaintiff's performance had never been at issue previously. *Id.* ¶ 42. The PIP reported that Plaintiff was not at the level expected of a Technology Support Supervisor and directed him to make any further employee complaints to Kim, not to Human Resources. *Id*.

On March 6, 2023, Plaintiff told Kim that his subordinates were continuing to harass him. *Id.* ¶ 43. Kim told Plaintiff to "stop talking about the past" and not to speak to Human Resources regarding his complaints. *Id.* ¶ 44. A week later, Plaintiff sent a memorandum to Human Resources questioning why he was placed on the PIP, and relayed Kim's instruction to not report his concerns to Human Resources. *Id.* ¶ 45–47. That same week, multiple senior directors told Plaintiff in meetings and on phone calls to "stop looking in the rearview mirror." *Id.* ¶¶ 48–50.

In March 2023, Waskowicz stated that he "did not have to listen to [Plaintiff]," and that Plaintiff was "not his boss anymore." *Id.* ¶ 51. That same month, Kim learned that someone in the technology department "accidentally" wiped a former employee's laptop and reprimanded only the three Black employees in the department—including Plaintiff—and ordered them to undergo additional preservation training. *Id.* ¶¶ 53–54. Waskowicz then wrote an "angry" email to the technology department, "attack[ing] [Plaintiff] and the process [Plaintiff] had already put into place to avoid preservation issues." *Id.* ¶ 56. In this email, Wasckowicz disclosed that Lima was

responsible for the mishandling of the laptop. *Id.* Kim never reprimanded Lima nor mandated the same training for him. *Id.* ¶ 57.

### iii. Work Schedule Change

On March 27, 2023, Kim directed Plaintiff to change his schedule to a later shift. *Id.* ¶ 58. Kim insisted on the change, even though Plaintiff told him that he could not work the later shift because he had to "drive his daughter to after-school activities every day of the week, except Thursdays." *Id.* ¶¶ 58–60.

On April 10, 2023, Plaintiff reported Waskowicz's comments and behavior to Human Resources. *Id.* ¶ 62. The next day, Defendant fired him through a Separation Agreement, effective the same day, accusing him of inappropriately accessing data without proper authorization and sending proprietary information to his personal email address. *Id.* ¶ 64–65.

## B. Procedural History

In Counts II, V, and VIII, Plaintiff alleges hostile work environment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the D.C. Human Rights Act. *Id.* ¶¶ 76–80, 91–95, 106–10. In Counts XIII and XIV, Plaintiff also alleges retaliation under Title VII and the D.C. Human Rights Act ("DCHRA").[1] *Id.* ¶¶ 131–39. Finally, in Count XII, Plaintiff alleges family responsibilities discrimination under the DCHRA. *Id.* ¶¶ 126–30. Defendant moves to dismiss these counts under Federal Rules of Civil Procedure 12(b)(6), arguing that Plaintiff (1) fails to state a claim for a hostile work environment; (2) fails to state a claim for a retaliatory hostile work environment; (3) fails to exhaust administrative remedies under Title VII for his retaliation

---

[1] The Amended Complaint incorrectly numbers the claims, listing two as "Count 12." Am. Compl. at 14. For the purposes of this Memorandum Opinion, and the accompanying order, the family responsibility discrimination claim will be Count XII; *id.* ¶¶ 126–30; the retaliatory hostile work environment claim under Title VII will be Count XIII, *id.* ¶¶ 131–35; the retaliatory hostile work environment claim under DCHRA will be Count XIV, *id.* ¶¶ 136–39.

claim; and (4) fails to state a claim of family responsibilities discrimination under the DCHRA. *See* Def.'s Mot. at 5–15.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a plaintiff fails to state a claim upon which relief can be granted. *Peavy v. Holder*, 657 F. Supp. 2d 180, 185 (D.D.C. 2009). Courts "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citation omitted). That said, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court need not accept as true "a legal conclusion couched as a factual allegation," nor "inferences . . . unsupported by the facts set out in the complaint." *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotations marks and citations omitted).

## III. ANALYSIS

### A. Hostile Work Environment

Plaintiff brings hostile work environment claims (Counts II, V, and VIII) under three different statutes: Title VII, Section 1981, and the DCHRA. Am. Compl. ¶¶ 76–80, 91–95, 106–10. But all three counts warrant dismissal for the same reason: Plaintiff fails to state a claim that he endured severe or pervasive harassment.

To state a hostile work environment claim under Title VII and Section 1981, Plaintiff must show "that [his] employer subjected [him] to discriminatory intimidation, ridicule, and insult that

is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (internal quotation marks and citations omitted). The constituent acts must be "'adequately linked' such that they form 'a coherent hostile environment claim.'" *Baird v. Gotbaum*, 792 F.3d 166, 168–69 (D.C. Cir. 2015) (quoting *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011).

The incidents Plaintiff alleges spread across eight months and do not amount to the severe or pervasive, race-based harassment that would constitute a hostile work environment. Chief among Plaintiff's allegations is that in July 2022, one of his subordinates protested his direction explicitly because of Plaintiff's race. Am. Compl. ¶ 23. Although Plaintiff encountered more difficulties with his co-workers from November 2022 until his termination in early April 2023, *id.* ¶¶ 32–34, 36, 39, 51, the "objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (internal quotation marks and citation omitted).

Plaintiff alleges several individual disputes with his subordinates and supervisors that fail to collectively establish a hostile work environment. He alleges that in November 2022, Michele Lima, a new hire on his team, "disrespected" him, "questioned his authority," and "disregarded his directions." Am. Compl. ¶ 29. Meanwhile, Kim called Plaintiff "stupid." *Id.* ¶ 32. Defendant met with Kim and required him to read a "prepared apology" to Plaintiff. *Id.* ¶ 34. Lima "refused to follow" Plaintiff's directions again in February 2023. *Id.* ¶ 35. In March 2023, the disputes continued. Plaintiff was put on a PIP for his work performance for the first time, while informing his supervisors "that his subordinates continue[d] to harass and sabotage him." *Id.* ¶¶ 40, 43. In response, Defendant repeatedly told him to "stop talking about the past," *id.* ¶ 44; *see also id.*

¶¶ 48–50, even though Waskowicz continued to disobey Plaintiff, saying that he was "not his boss anymore." *Id.* ¶ 51. Defendant reprimanded Plaintiff and his fellow Black supervisees for "accidentally" *id.* ¶ 53, wiping a former employee's laptop, despite the fact that Plaintiff "was out of the office" when the alleged mistake occurred. *Id.* ¶ 55. During the last week of March, Kim, Plaintiff's direct supervisor, made matters worse by directing Plaintiff to change his work schedule to a later shift, although he was told that that schedule conflicted with Plaintiff's obligation to pick up his daughter from her after-school activities. *Id.* ¶ 58–63. Plaintiff was fired weeks later. *Id.* ¶ 64.

Individual acts are only actionable as part of a hostile work environment claim if the conduct is so "extreme to amount to a change in the terms and conditions of employment." *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005) (internal quotation marks and citation omitted). Although Plaintiff endured repeated disputes with his co-workers between November 2022, January 2023, and in March and April 2023, "occasional name-calling, rude emails, lost tempers and workplace disagreements" are insufficient to support a hostile work environment claim. *See Magowan v. Lowery*, 166 F. Supp. 3d 39, 70 (D.D.C. 2016). Derogatory comments by an employer to an employee, even when tied to the employee's national origin, can fail to establish a hostile work environment if dispersed over time and if the constituent acts are not adequately linked. *See Jackson v. Gallaudet University*, 169 F. Supp. 3d 1, 5 (D.D.C. 2016) (finding that demeaning comments by an employer to an employee directly about the employee's national origin over a two-year time span did not constitute severe harassment for a hostile work environment claim).

Similarly, the DCHRA provides that "[i]t shall further be an unlawful discriminatory practice to engage in harassment based on one or more protected characteristics specified in subsection (a)," which includes race and color. D.C. Code §§ 2-1402.11(a), (c-2)(1). The DCHRA

defines harassment as: "conduct, whether direct or indirect, verbal or nonverbal, that unreasonably alters an individual's terms, conditions, or privileges of employment or has the purpose or effect of creating an intimidating, hostile, or offensive work environment." *Id.* § (c-2)(2)(A). To determine whether harassment exists, the DCHRA outlines the following factors: the frequency of the conduct; the duration of the conduct; the location where the conduct occurred; whether the conduct involved threats, slurs, epithets, stereotypes, or humiliating or degrading conduct; and whether any party to the conduct held a position of formal authority over or informal power relative to another party. *Id.* § (c-2)(3).

For the same reasons discussed above, the court finds that Defendant's alleged actions cannot sustain a hostile work environment claim under the DCHRA either. *Elhusseini v. Compass Grp. USA, Inc.*, 578 F. Supp. 2d 6, 18 (D.D.C. 2008) (citing *Sparrow*, 216 F.3d at 1114) (noting that the legal standard for discrimination under the DCHRA is substantively the same as under Title VII). Again, the conduct at issue took place over eight months, and many of the disputes involved Plaintiff's subordinates, not just his supervisors. Am. Compl. ¶¶ 29–64. On at least two occasions, management acted when Plaintiff reported discriminatory behavior. *Id.* ¶¶ 26, 34. Therefore, Plaintiff's hostile work environment claims, Counts II, V, and VIII, will be dismissed.

### B. Retaliatory Hostile Work Environment

In Counts XIII and XIV, Plaintiff alleges that he was subjected to a hostile work environment under Title VII and the DCHRA in retaliation for his protected activity. Am. Compl. ¶¶ 131–39. As with Counts II, V, and VIII, because Plaintiff fails to allege a hostile work environment, Counts XIII and XIV must also be dismissed.

To state a prima facie case of retaliation under Title VII and the DCHRA, Plaintiff must show that: (1) he engaged in statutorily protected activity, (2) the employer took an adverse

employment action against him, and (3) a causal connection existed between the two. *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) (Title VII); *Howard Univ. v. Green*, 652 A.2d 41, 45 (D.C. 1994) (DCHRA); *see Bryant v. D.C.*, 102 A.3d 264, 268 (D.C. 2014) (noting that the analysis for DCHRA retaliation is the same for Title VII). The D.C. Circuit has recognized that "a hostile work environment can amount to retaliation under Title VII." *Hussain*, 435 F.3d at 366; *see also Singletary v. D.C.*, 351 F.3d 519, 526 (D.C. Cir. 2003).

But, for the reasons discussed above, *infra* at 5–6, Plaintiff fails to allege a hostile work environment, and consequently his retaliatory hostile work environment also fails. Counts XII and XIV will therefore be dismissed.

### C. Family Responsibilities Discrimination

Finally, Count XII alleges family responsibilities discrimination under the DCHRA. Am. Compl. ¶¶ 126–30. This count survives Defendant's Motion to Dismiss.

To state a claim for family responsibilities discrimination, a plaintiff must plead facts showing that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination based on his family responsibilities. *Abebio v. G4S Gov't Sols., Inc.*, 72 F. Supp. 3d 254, 257 (D.D.C. 2014). The DCHRA defines "family responsibilities" to include "a contributor to the support of a person or persons in a dependent relationship[.]" D.C. Code § 2-1401.02(12).

The parties do not dispute that Plaintiff is a member of a protected class. Am. Compl. ¶ 9; Def.'s Mot. at 13–15. Defendant challenges whether Plaintiff satisfies the second element, arguing that a schedule change, "without more, such as a reduction in salary, pay, grade, or benefits" is not an adverse employment action. Def.'s Mot. at 13–14. But the Supreme Court in *Burlington Northern & Santa Fe Railway Company v. White*, 548 U.S. 53, 69 (2006), cautioned that in

evaluating whether an employment action is materially adverse, attention must be paid to the surrounding circumstances. It specifically noted that although a "schedule change in an employee's work schedule may make little difference to many workers, [it] may matter enormously to a [parent] with school-age children." *Id.* "[D]epending on the context, a schedule change in an employee's work schedule . . . could deter a reasonable employee from complaining and therefore might be actionable." *Burrell v. Shepard*, 321 F. Supp. 3d 1, 13 (D.D.C. 2018) (quoting *Burlington N. & Santa Fe Ry.*, 548 U.S. at 69) (second alteration removed) (internal quotation marks omitted).

Further, the two cases upon which Defendant relies fail to support its contention. In *Mohmand v. Broadcasting Board of Governors*, 2018 WL 4705800, at *5 (D.D.C. Sept. 30, 2018), the court did not hold that schedule changes can never be an adverse action, only that Plaintiff failed to specify how his schedule changes were discriminatory. Nor does *Burke v. Inter-Con Sec. Sys., Inc*, 926 F. Supp. 2d 352, 358 (D.D.C. 2013), help Defendant's argument; in that case, plaintiff had "not submitted any evidence of a scheduling conflict." *Id.*

Here, it is plausible that Plaintiff's schedule change adversely affected his employment. He alleges that he needed to work earlier hours to collect his daughter from school and take her to her activities. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 69. And he argues that the schedule change had a "devastating impact" on his family responsibilities. Pl.'s Opp'n at 21, ECF No. 21 ("Pl.'s Opp'n").

As to the third element, Plaintiff contends that Kim changing his hours raises an inference of discrimination because Kim knew "full well" of his family responsibilities when he did so. *Id.*; *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 86 (D.D.C. 2014) (denying a motion to dismiss a DCHRA claim where plaintiff was a parent that had "to miss or leave work" to take care

of his "autistic son, another son with legal problems, and a daughter who was sexually assaulted"). The court agrees. When Plaintiff began his role as Technology Support Supervisor in July 2022, he started working earlier hours, 7:30 to 4:00 PM, because of his childcare responsibilities. Am. Compl. at ¶ 17. Not until March 17, 2023, did Kim instruct Plaintiff to change his work schedule to a later shift. *Id.* ¶ 58. In response, Plaintiff "explained that he had to be on the earlier shift because he had to drive his daughter to after-school activities every day of the week, except Thursdays." *Id.* ¶ 59. Kim was thus on notice that Plaintiff had a family responsibility that necessitated his early work schedule. Nonetheless, Kim "directed" Plaintiff to change his work schedule "the following week." *Id.* ¶ 60.

Indeed, when Plaintiff complained to the Associate Relations Coordinator about Kim's decision, he emphasized that he "told" Kim of his "family obligations," but that Kim was trying to "punish" him. *Id.* ¶ 61. Because Kim knew of Plaintiff's parental responsibilities when he decided to change his work schedule without giving a work-related reason, it is plausible that Kim could have discriminated against Plaintiff on that basis. *See Miles v. Univ. of the D.C.*, No. 12-378, 2013 WL 5817657, at *13 (D.D.C. Oct. 30, 2013) (finding that the plaintiff had raised an inference of family responsibilities discrimination under the DCHRA sufficient to survive a motion to dismiss where, among other things, the plaintiff had alleged that she received a letter from a superior "that appear[ed] to equate the plaintiff's maternity leave with 'abandon[ing] the [UDC] [S]ervice [C]enter and its clients'" and that "suggest[ed] that the plaintiff should be terminated from her position" in order to improve the center's performance).

Defendant's only response is that Plaintiff does not allege that Kim changed his schedule "because of his family responsibility," Def.'s Mot. at 15, arguing that Plaintiff only alleges a "conversation" between him and Kim "that does not include any facts or statements suggest[ing]

that" Kim "changed the schedule because Plaintiff is a parent or had childcare responsibilities." *Id.* at 14–15. But at this juncture, accepting Plaintiff's allegations as true, Defendant nevertheless directed Plaintiff to work a later shift despite being informed of his family responsibilities and after Plaintiff had been working the earlier shift for several months without complaint. That gives rise to an inference of discrimination, sufficient to survive a Rule 12(b)(6) challenge. *Abebio*, 72 F. Supp. 3d at 257.

Accordingly, Count XII does not warrant dismissal.

### IV.   CONCLUSION

For the foregoing reasons, the court will GRANT IN PART and DENY IN PART Defendant's Limited Motion to Dismiss. A corresponding order will follow.

Date: March 31, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge